Opinion issued June 12, 2003
 





 







In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-00-00585-CV




WILLIAM STEPHENS AND RAY JORDAN, Appellants

V.

WAYNE DOLCEFINO; KTRK TELEVISION, INC.; HENRY
FLORSHEIM; ABC, INC.; AND STEVE BIVENS, Appellees







On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 99-43183




OPINION ON MOTION FOR REHEARING
          Appellees have moved for en banc rehearing of the panel’s opinion and
judgment. The panel withdraws its opinion of August 8, 2002 and substitutes this
opinion in its place; however, the disposition and judgment do not change. The
motion for rehearing addressed to the en banc Court is denied as moot.
          Appellants, William Stephens and Ray Jordan, appeal from a take-nothing
summary judgment rendered on their claims against all appellees (together, “the
KTRK parties”). We affirm the judgment in part, reverse it in part, and remand the
cause.
Background
          At the time of the events underlying this suit, appellant Stephens was the
Deputy Controller of the City of Houston; appellant Jordan was a Houston Police
Department sergeant; appellee Wayne Dolcefino was an investigative reporter for
appellee KTRK Television, Inc., which in turn was the licensee of KTRK-TV,
Channel 13 in Houston (“Channel 13”; not a party to this suit); appellee Steve Bivens
was a KTRK researcher; appellee Henry Florsheim was KTRK’s president and
general manager; and the local KTRK station was an affiliate of appellee ABC, Inc.
          During the summer of 1997, Dolcefino began investigating then City of
Houston Controller Lloyd Kelley (also appellants’ attorney in this suit) to determine
Kelley’s whereabouts during work hours, among other things.


 As part of this
investigation, Dolcefino sent Bivens to a two-day continuing legal education program
held July 10-11, 1997 at a hotel in San Antonio, Texas (“the San Antonio CLE”). 
Besides Kelly, Stephens, Jordan, and then Houston Police Chief C.O. Bradford also
attended the San Antonio CLE. Using a hidden “pager” camera, Bivens recorded
Kelley’s whereabouts at the San Antonio CLE.
          The case arises out of Bivens’s pager-camera recording of a conversation (“the
courtyard conversation”) among appellants, Kelley, and Chief Bradford at the July
10 morning break in an outdoor courtyard of the hotel at which the San Antonio CLE
was held. The KTRK parties admit that the pager camera recorded some sounds, but
claim that those sounds were ambient only and were not enhanced and that any
sounds from the courtyard conversation in particular were incomprehensible.
Appellants dispute the claim that the pager camera could not or did not record the
courtyard conversation comprehensibly. 
           In August 1997, Channel 13 broadcast Dolcefino’s report of the Kelley
investigation. Specifically, on August 15, 1997, the television station broadcast
footage recorded at the San Antonio CLE. The broadcast footage contained no
sound.
          The sound from the pager-camera tape was eventually erased before trial and
before being produced to appellants. The KTRK parties claim that the tape was
recycled in the normal course of business, but appellants claim that the tape was
intentionally spoliated.
           Appellants sued the KTRK parties for violations of their privacy under Texas
Civil Practice and Remedies Code chapter 123. See Tex. Civ. Prac. & Rem. Code
Ann. § 123.001-.004 (Vernon 1997 & Supp. 2003) (“the wiretapping claim”);



negligence; negligent supervision of the individual defendants; conspiracy to commit
the aforementioned torts; and intentional infliction of emotional distress (“IIED”). 
Appellants sought statutory damages, punitive damages, a permanent injunction, and
attorney’s fees and costs. Appellants’ claims are based on the alleged non-consensual
recording of sound from, not visual images of, the courtyard conversation.
          In a joint motion, the KTRK parties moved simultaneously for rule-166a(c) and
rule-166a(i) summary judgment against all appellants’ claims and against the
requested exemplary damages. After sustaining some of the KTRK parties’
objections to appellants’ summary judgment evidence, the trial judge granted the
KTRK parties’ summary judgment motion without specifying grounds or stating
whether he was granting the rule-166a(c) or rule-166a(i) portion of the motion.


 
Appellants moved for reconsideration/new trial based upon “new evidence,” which
motion the trial judge denied after an evidentiary hearing.
Discussion
A.      Standard of Review and Burden of Proof
          We follow the usual standard of review for an order granting summary
judgment without specifying grounds. See Dow Chem. Co. v. Francis, 46 S.W.3d
237, 242 (Tex. 2001). The KTRK parties moved for summary judgment under both
rules 166a(c) and 166a(i).


 We thus apply the standard of review appropriate to each
type of summary judgment. See Tex. R. Civ. P. 166a(i) (no-evidence summary
judgment), 166a(c) (traditional summary judgment); Flameout Design & Fabrication,
Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex. App.—Houston [1st
Dist.] 1999, no pet.) (166a(i) standard); Science Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997) (166a(c) standard).
B.      Statute of Limitations
          The KTRK parties moved for rule-166a(c) and rule-166a(i) summary judgment
on the ground of limitations. In issue 10, appellants claim that summary judgment
was improperly rendered on this ground. 
          The parties agree that the two-year statute of limitations applies to all of
appellants’ causes of action. See Tex. Civ. Prac. & Rem. Code Ann. § 16.003
(Vernon 2002) (suits for personal injury); Mellon Serv. Co. v. Touche & Ross Co., 17
S.W.3d 432, 435 n.1 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (negligence, civil
conspiracy); Collins v. Collins, 904 S.W.2d 792, 804 (Tex. App.—Houston [1st Dist.]
1995) (state wiretap statute), writ denied, 923 S.W.2d 569 (Tex. 1996); Bhalli v.
Methodist Hosp., 896 S.W.2d 207, 211 (Tex. App.—Houston [1st Dist.] 1995, writ
denied) (IIED). They also agree that all appellants’ causes of action arose out of the
July 10, 1997 filming of the courtyard conversation, that Stephens filed suit on
August 26, 1999, and that Jordan first joined that suit on September 27, 1999.
          Limitations is an affirmative defense on which the KTRK parties had the
burden of proof. See Tex. R. Civ. P. 94; Woods v. William M. Mercer, Inc., 769
S.W.2d 515, 517 (Tex. 1988). Only a rule-166a(c) summary judgment could thus
have been rendered on this ground. See Tex. R. Civ. P. 166a(i); Young Refining
Corp. v. Pennzoil Co., 46 S.W.3d 380, 385 (Tex. App.—Houston [1st Dist.] 2001,
pet. denied). We review accordingly.
          Appellants pled the discovery rule by second supplemental petition.


 It was
thus the KTRK parties’ burden to prove the claims’ accrual date and conclusively to
negate the discovery rule. See Burns v. Thomas, 786 S.W.2d 266, 267 (Tex. 1990). 
“A cause of action generally accrues, and the statute of limitations begins to run,
when facts come into existence that authorize a claimant to seek a judicial remedy.” 
Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 514
(Tex. 1998). The discovery rule defers a cause of action’s accrual date if the
wrongful act and resulting injury were inherently undiscoverable when they occurred,
but may be objectively verified. S.V. v. R.V., 933 S.W.2d 1, 6 (Tex. 1996). To be
inherently undiscoverable, an injury must be unlikely to be discovered within the
prescribed limitations period despite due diligence. Id.
          The KTRK parties’ summary judgment motion asserted that (1) the alleged
torts occurred July 10, 1997 and (2) the discovery rule did not apply because (i) the
alleged injury (invasion of privacy) was neither inherently undiscoverable nor
objectively verifiable and (ii) the August 15, 1997 broadcast of footage from the San
Antonio CLE defeated the discovery rule. In support, the KTRK parties produced the
following summary judgment evidence:
●On August 15, 1997, the KTRK parties broadcast a news report
about Kelley’s attendance at the San Antonio CLE.
 
●The specific footage of the courtyard conversation was never
broadcast, but excerpts of the pager-camera footage made at the
San Antonio CLE—including footage showing Kelley and
Stephens (but not Jordan) entering the hotel courtyard during the
July 10 morning break—were broadcast on August 15, 1997.
 
●Stephens saw the August 15, 1997 broadcast showing
surveillance footage from the San Antonio CLE, including the
footage, shot from the hotel courtyard, of his and Kelley’s
entering the courtyard.
 
●Stephens testified that, after seeing the August 15 broadcast, he
did not then inquire about the tape’s contents.
 
●Kelley also saw the August 15, 1997 broadcast showing
surveillance footage from the San Antonio CLE. 
 
          In response, appellants rely on the following:



 
●The KTRK parties stipulated that they first produced the
videotape from the San Antonio CLE on August 13, 1999, in
response to discovery requests in Randolph et al. v. Dolcefino et
al., Cause No. 97-45492, 127th District Court, Harris County. 
 
●Jordan was not shown in the broadcast footage from the San
Antonio CLE.
 
●Stephens testified that he did not realize when he saw the
broadcast that the San Antonio CLE footage was taken from a
hidden camera.



          The KTRK parties undisputedly proved that the alleged torts occurred on July
10, 1997. However, we hold that the KTRK parties did not conclusively negate the
discovery rule. The filmclip taken at the San Antonio CLE was broadcast without
sound. The courtyard was a public place, and, as discussed below, a videotape
without sound in the courtyard would not have violated the law. In contrast, a
surreptitious audiotaping of conversations in the courtyard could have violated the
law, depending on the circumstances. Although Stephens was on notice that he had
been videotaped once he saw the August 15 broadcast, he could not reasonably have
been expected to know that the videotape included sound. Based solely on the KTRK
parties’ summary judgment evidence, why would a reasonable person in Stephen’s
position presume that he had been audiotaped without permission by a stranger to his
conversations (potentially an offense), when the evidence showed only that he had
been videotaped in a public place (not an offense)? Furthermore, the KTRK parties
did not prove when, if ever, Jordan saw the broadcast, and, in any event, that
broadcast showed only Kelley and Stephens (not Jordan) entering the courtyard.
          At oral argument, the KTRK parties relied on Dolcefino v. Randolph, in which 
the Fourteenth Court of Appeals held that limitations barred Kelley’s wiretapping
claim against KTRK-related entities based on audio recordings of his conversation
with Chief Bradford at the San Antonio CLE. See id., No. 14-00-00602-CV, slip op.
at 18-19 (Tex. App.—Houston [14th Dist.] Aug. 16, 2001, pet. denied) (not
designated for publication). However, the Randolph defendants produced
uncontroverted proof that Kelley actually discovered the next day that sound from
that conversation had been recorded. See id., slip op. at 19. The KTRK parties did
not produce such evidence here. Furthermore, Kelley is not a plaintiff in this suit, and
his knowledge would not necessarily show appellants’ knowledge. Randolph thus
does not control.
          On rehearing, the KTRK parties argue that they negated the discovery rule as
a matter of law because whether the pager camera recorded the courtyard
conversation audibly is disputed and cannot be objectively verified, as the audiotaped
portion no longer exists. See S.V., 933 S.W.2d at 15 (holding that “the bar of
limitations cannot be lowered for no other reason than a swearing match between
parties over facts”). We disagree. First, the sound from the videotape of the San
Antonio CLE cannot be reviewed because the KTRK parties erased it—they say in
the usual course of business, appellants say as an act of spoliation. In either case, a
defendant cannot unilaterally destroy the principal object needed to verify a wrong
objectively and then argue that the plaintiff cannot objectively verify the wrong
because that object is missing. Additionally, as discussed further below, the
applicable wiretapping statute creates a cause of action for intercepting or attempting
to intercept certain communications. See Tex. Civ. Prac. & Rem. Code Ann. §
123.002(a). When appellants later obtained the pager camera and tested it, the results
of that test (albeit disputed) showed that the camera was capable of recording similar
sounds under allegedly similar conditions, thus raising a fact issue on whether the
alleged wrong could be objectively verified.



          Accordingly, we hold that the KTRK parties did not conclusively negate the
discovery rule. Thus, summary judgment could not properly have been rendered on
that ground.
          We sustain issue 10.
C.      Laches
          The KTRK parties moved for rule-166a(c) and rule-166a(i) summary judgment
on the ground of laches. In issue 11, appellants claim that summary judgment was
improperly rendered on this ground. 
          Laches is an affirmative defense on which the KTRK parties had the burden of
proof. City of Houston v. Muse, 788 S.W.2d 419, 422 (Tex. App.—Houston [1st
Dist.] 1990, no writ). Only a rule-166a(c) summary judgment could thus have been
rendered on this ground. See Tex. R. Civ. P. 166a(i); Young Refining Corp., 46
S.W.3d at 385. We review accordingly.
          To establish laches conclusively, the KTRK parties had to show (1) appellants’
unreasonable delay in asserting a legal or equitable right and (2) the KTRK parties’
good faith change of position, to their detriment, in reliance on appellants’ delay. 
Muse, 788 S.W.2d at 422. The only evidence that the KTRK parties offered was
Dolcefino’s affidavit testimony that “[d]efendants are prejudiced by the delay in
Plaintiffs’ filing this suit because of potentially faded memories and the inability to
collect all evidence necessary to defend the claims asserted.” This is not evidence of
any good-faith change in position by the KTRK parties to their detriment. 
Accordingly, summary judgment could not have been granted on that ground.
          We sustain issue 11.
D.      The “Derivative Claims”: Intentional Infliction of Emotional Distress,
Negligence (and Negligence Per Se), Negligent Supervision, and Civil
Conspiracy

          The KTRK parties moved for rule-166a(c) and rule-166a(i) summary judgment
on all elements of intentional infliction of emotional distress, negligence (including
negligence per se), negligent supervision, and civil conspiracy. The KTRK parties
also moved (1) against the negligent-supervision claim on the ground that it was not
a separate cause of action from negligence; (2) against all four “derivative” claims
because the claim on which the derivative claims were based (privacy invasion)
allegedly failed; and (3) against the civil conspiracy claim because a corporate
defendant could not conspire with its own agents. 
          Appellants’ sole briefing on any of these claims appears on two pages of their
brief. There is no realistic attempt to discuss the four claims’ elements separately. 
There is no discussion of whether negligent supervision could exist separately from
negligence or of whether a corporate defendant could conspire with its own agents. 
There is no citation to any authority. The only record citation is to one page of the
KTRK parties’ summary judgment motion. Although appellants also cite to
Appendices A and B of their brief, nothing shows that these appendices contain
materials that are part of our record, and the KTRK parties claim that the materials
are not.
          Accordingly, we hold that appellants waived these challenges for lack of
adequate briefing. See Tex. R. App. P. 38.1(h); Franz, 35 S.W.3d at 755. We thus
overrule issues 12 and 13, as well as any of the derivative-claim arguments that could
be construed as being encompassed by issue three.
E.      Exemplary Damages
          The KTRK parties moved for rule-166a(c) and rule-166a(i) summary judgment
against appellants’ request for exemplary damages on the grounds that (1) no
evidence existed on the elements of fraud, malice, ill will, reckless disregard, or the
like and (2) the federal and state constitutions prohibited exemplary damages. See
U.S. Const. I, XIV; Tex. Const. art. I, § 8.
          In issue seven, appellants state their challenge to the exemplary-damages
summary judgment ground as follows: “Whether the trial court erred in granting
Appellees’ motion for summary judgment because the Constitution does not bar
exemplary damages?” That issue refers to page 37 of the brief, but that page does not
concern exemplary damages or the First Amendment, and appellants’ briefs do not
contain any argument in support of this issue. Accordingly, we hold that appellants
waived issue seven by inadequate briefing. See Tex. R. App. P. 38.1(h); Franz, 35
S.W.3d at 755. Even if this issue were adequately briefed, we would still affirm
because appellants do not challenge the alternate ground for summary judgment on
exemplary damages, i.e., no evidence of fraud, malice, ill will, reckless disregard, or
the like. Because any error on that alternate ground is unassigned, we would affirm
the summary judgment prohibiting exemplary damages in any event. See Garcia v.
Nat’l Eligibility Express, Inc., 4 S.W.3d 887, 889 (Tex. App.—Houston [1st Dist.]
1999, no pet.).
          We overrule issue seven.
F.      The Wiretapping Claim

          The KTRK parties moved for rule-166a(c) and rule-166a(i) summary judgment
against the wiretapping claim on (1) all elements of the claim and (2) the ground that
the KTRK parties’ actions related to newsgathering activities, which allegedly
precluded liability and damages under the federal and state constitutions. See U.S.
Const. I, XIV; Tex. Const. art. I, § 8. In issues one, two, four, five, six, 16, and
parts of issue three, appellants argue that the trial judge erred in rendering summary
judgment against the wiretapping claim.
          1.       Preliminary Matter
          For purposes of our review of this summary judgment, appellants’ privacy-invasion claim stands or falls under Texas Civil Practice and Remedies Code chapter
123. See Tex. Civ. Prac. & Rem. Code Ann. § 123.001-.004. Appellants’ “live”
petition alleged privacy invasion claims under the common law, “the Constitution,”
and “laws enacted” to protect privacy rights, without specifying which constitutional
or statutory provisions. However, appellants conceded in their summary judgment
response that their cause of action for privacy invasion was made solely under chapter
123.


 Cf. Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 568 (Tex.
2001) (holding that party’s summary judgment response and counter-motion for
summary judgment contained clear, unequivocal, and binding judicial admission). 
By this concession, appellants abandoned all privacy-invasion claims, except the
claim asserted under chapter 123, before summary judgment was rendered. Even if
appellants had not abandoned their other privacy-invasion claims, the trial judge
would properly have rendered summary judgment on those claims under rule 166a(i)
because appellants did not “point out evidence that raises a fact issue on the
challenged elements.” See Tex. R. Civ. P. 166a(i), comment to 1997 amendment.
          We thus overrule issue eight, as well as all argument under any of appellants’
issues concerning invasion of privacy arising under the common law, either
constitution, or any state or federal statute other than chapter 123, because those
claims were not before the trial court when it rendered summary judgment and are
thus not before us or, alternatively, were properly disposed of under rule 166a(i).
          2.       The Texas Statutes
§ 123.002. Cause of Action.
(a)A party to a communication may sue a person who:
 
                    (1)     intercepts, attempts to intercept, or employs or obtains another
to intercept or attempt to intercept the communication; . . . .

Tex. Civ. Prac. & Rem. Code Ann. § 123.002(a) (emphasis added).
§ 123.001. Definitions.
In this chapter:
 
          (1)     “Communication” means speech uttered by a person or information
including speech that is transmitted in whole or in part with the aid of
a wire or cable.
 
          (2)     “Interception” means the aural acquisition of the contents of a
communication through the use of an electronic, mechanical, or other
device that is made without the consent of a party to the communication,
but does not include the ordinary use of:
 
                    (A)    a telephone or telegraph instrument or facility or telephone and
telegraph equipment;
 
                    (B)    a hearing aid designed to correct subnormal hearing to not better
than normal;
 
                    (C)    a radio, television, or other wireless receiver; or
 
                    (D)    a cable system that relays a public wireless broadcast from a
common antenna to a receiver. 
Tex. Civ. Prac. & Rem. Code Ann. § 123.001 (emphasis added).
          3.       Discussion
                    a.       Judicial Notice of Judge Wood’s Order
          In issues one, two, and 16, appellants claim that the trial judge erred in
rendering summary judgment on the wiretapping claim because (1) the trial judge
took judicial notice of an order by Judge Wood in Lloyd Kelley’s lawsuit in the 127th
District Court of Harris County, (2) Judge Wood’s order allegedly recited that the
KTRK parties had spoliated the pager-camera tape of the courtyard conversation by
deleting its sound, and (3) that spoliation finding sufficed to defeat a rule-166a(i)
summary judgment as a matter of law and to raise a fact issue on a rule-166a(c)
summary judgment. The KTRK parties dispute that Judge Wood’s order found
spoliation. The KTRK parties do not dispute that they deleted the sound from the
videotape at issue, but they claim that they did so before any suit’s filing and solely
under their usual business practice of recycling tapes.
          Judge Wood’s order read in pertinent part as follows:
After considering the testimony and evidence in the sanctions
hearing [on plaintiffs’ motion] concluded in December, the relief
requested is granted in part and denied in part as to the issue of the
sound on the 8mm tapes . . . .
 
1.8mm tapes. Plaintiffs’ request to strike defendants’ [KTRK-related parties] pleadings for taping over prior 8mm surveillance tapes
during July and August of 1997 is denied. The court finds that the acts
complained about were prior to suit. A jury is entitled to consider this
conduct as part of the evidence in the case.
 
From the evidence submitted by plaintiffs, the court finds that the legal
threshold has been met to entitle plaintiffs to present this evidence at
trial. A decision by the Court on whether to submit an instruction to the
jury on spoliation, and, if so, what wording to submit, should be decided
at the close of evidence based on all the evidence admitted. All counsel
should be prepared to discuss the correct wording of any such
instruction at the time of the pre-trial conference in the case.

          This is not a ruling that the KTRK parties “intentionally spoliated” the tapes’
sound, but is instead a ruling that, based on the evidence presented to Judge Wood,
the plaintiffs had made a threshold showing entitling them to present spoliation
evidence to the jury in that case. Judge Wood expressly reserved ruling on whether
to submit a spoliation instruction. Thus, Judge Wood’s order, by itself, could not
defeat the rule-166a(i) summary judgment as a matter of law or raise a fact issue on
the rule-166a(c) summary judgment.



          We overrule issues one, two, and 16.
                    b.       Fact Issues on Wiretapping Claim
          In issue four and part of issue three, appellants claim that the trial judge erred
in rendering rule-166a(c) and rule-166a(i) summary judgment against their
wiretapping claim because material fact issues existed.
          Appellants’ wiretapping claim had the following elements: (1) the KTRK
parties intercepted or attempted to intercept, (2) by using an electronic, mechanical,
or other device, (3) the contents of speech uttered by appellants (4) without the
consent of at least one party to appellants’ conversation.


 See Tex. Civ. Prac. &
Rem. Code Ann. §§ 123.001(a)(1), 123.002(a)(1). The parties dispute only the
claim’s first, third, and fourth elements. For ease of discussion, we discuss the
elements out of order.
                    Contents of Appellants’ Speech
          The KTRK parties’ position here and below was that no discernable speech
was recorded, but only garbled or ambient noise.


 However, at the hearing on
appellants’ motion for reconsideration/new trial, the trial judge admitted into
evidence an audio and video test recording from the very pager camera at issue here. 
That test tape clearly recorded—when appellants tested it under noisy conditions in
public areas—conversations at distances even further from the distance at which
Bivens recorded the courtyard conversation. The trial judge ruled that he would
consider evidence from the reconsideration/new trial hearing to be part of the
summary judgment record. This evidence alone raises a fact issue on whether the
pager camera could or did intercept and record the actual contents of appellants’
courtyard conversation.



          On rehearing, the KTRK parties argue that we cannot consider the pager-camera test tape because it was admitted after the trial judge had rendered summary
judgment.


 See Chapman v. Mitsui Eng’g & Shipbuilding Co., Ltd., 781 S.W.2d 312,
315 (Tex. App.—Houston [1st Dist.] 1989, writ denied). However, a trial judge may
accept summary judgment evidence filed late, even after summary judgment, as long
as he affirmatively indicates in the record that he accepted or considered it. Oryx
Energy Co. v. Union Nat’l Bank, 895 S.W.2d 409, 412-13 n.3 (Tex. App.—San
Antonio 1995, writ denied); see also McMahan v. Greenwood, No. 14-01-00431-CV,
slip op. at 41 (Tex. App.—Houston [14th Dist.] May 29, 2003, no pet. h.)
(recognizing rule in Oryx); Farmer v. Ben E. Keith Co., 919 S.W.2d 171, 176 (Tex.
App.—Fort Worth 1996, no writ); Timothy Patton, Summary Judgments in Texas:
Practice, Procedure and Review § 7.06[1] (3rd ed. 2002) [hereinafter “Patton”]
(noting rule in Oryx); cf. John R. Ray & Sons, Inc. v. Stroman, 923 S.W.2d 80, 88 n.4
(Tex. App.—Houston [14th Dist.] 1996, writ denied) (considering on appeal ground
asserted in motion to reconsider summary judgment ruling, when trial court had
granted movant’s request to consider such ground).
          The KTRK parties argue that this exception does not apply for three reasons. 
First, they claim that the trial judge did not affirmatively indicate that he accepted the
tape as summary judgment evidence. Although the trial judge first admitted the
videotape for “purposes of this hearing only,” he then ruled that “[t]he court will
include the evidence offered today in the summary judgment record. The court, even
taking this evidence into the record, denies the Plaintiff’s motion for new trial.” 
(Emphasis added.) The KTRK parties did not object. This statement shows that the
trial judge accepted the tape as belatedly offered summary judgment evidence before
effectively reaffirming his earlier ruling. Second, the KTRK parties claim that
appellants did not argue that the tape was summary judgment evidence. But
appellants argued that the pager-camera test tape raised fact issues precluding
summary judgment. Third, citing a well-known treatise, the KTRK parties argue that
the trial judge’s ruling had to be written. See Patton § 7.06[1] (“Thus, the efficacy
of a post-judgment motion to preserve a complaint for appellate review depends upon
whether the trial court affirmatively considers the new grounds and proof as
memorialized by a written order.”). Patton’s statement is understandable because it
was based on Oryx, which had a written order. See Oryx, 895 S.W.2d at 412 n.3. 
However, the Oryx court did not hold that this type of order must always be written;



we have found no authority establishing such a blanket requirement, even though
most orders are written; and at least one court has considered an oral ruling.


 
Therefore, the trial judge’s oral ruling sufficed.
Intercept or Attempt to Intercept
          The KTRK parties’ rule-166a(c) summary judgment motion relied on
Dolcefino’s and Bivens’s affidavit testimony that (1) they did not intend to record
anyone’s private conversations at the San Antonio CLE, (2) the pager camera could
record only ambient sounds because its audio capability was less than that of the
human ear, (3) no audio-enhancing equipment was used on the pager camera, and (4)
the KTRK parties’ investigative unit had no use for the ambient sound that appellants
claimed that the pager camera had recorded. The KTRK parties’ rule-166a(i)
summary judgment motion asserted that there was no evidence that they attempted
to or did record anything with the pager camera. 
          We hold that there was evidence raising a fact issue on this element. First,
given the parties’ conflicting evidence on whether the pager camera could record
conversations clearly under allegedly similar conditions, and given Bivens’s
testimony that he could hear only a few words of the courtyard conversation with his
“bare” ears, a factfinder might disbelieve the KTRK parties’ further evidence that the
pager camera was not enhanced for sound. That is, there is a fact issue on whether
the pager camera was so enhanced.
          Second, appellants produced evidence that (1) Bivens stood within feet of
appellants, Kelley, and Chief Bradford, although our review of the courtyard tape
shows that the pager camera could record visual images at further distances; (2)
Dolcefino considered the pager camera’s audiotape to be “potentially important” for
confirming what Bivens thought he overheard in the courtyard conversation, which
implicated a “breaking story”; (3) Bivens and Dolcefino admitted that they listened
to the San Antonio tape to determine whether they could understand the courtyard
conversation; and (4) Dolcefino tried to have the tape’s sound enhanced to determine
whether the conversation could be understood. Viewed in the appropriate light, these
facts raise an inference that the KTRK parties attempted and intended to use, or did
use, the pager camera to intercept sound from the courtyard conversation.
Without Consent
          The KTRK parties argue here, as they did below, that appellants implicitly
consented, within the meaning of chapter 123, by speaking in a public place where
they did not have an objective expectation of privacy.


 In support, the KTRK parties
presented evidence that the courtyard was a crowded public place and that appellants,
Kelley, and Chief Bradford stood next to the buffet table, which “plenty” of people
visited.
          However, The KTRK parties’ evidence indicated that there was a din of voices
in the courtyard. Apparently because of that din, Bivens testified that he stood only
five to seven feet from the four men, yet overheard “with [his] naked ear” only “a few
words that were spoken.” Bivens did not claim to have heard the entire conversation,
despite his proximity. Stephens testified that the four men spoke in a “normal or
normal to low” conversational tone, and Jordan testified that the four men stood close
together so that they “wouldn’t have to talk loudly.” Dolcefino testified that he was
interested in enhancing the tape’s sound because, from the few words that Bivens
thought that he had overheard, Dolcefino thought Chief Bradford might have been
discussing with Kelley an on-going investigation that involved Kelley. If that topic
was being discussed,


 a reasonable inference is that the participants would not have
wanted to broadcast that discussion.
 
 
          We have viewed the videotape, which shows the following: (1) the buffet table
was along one of the courtyard’s walls, not in the center; (2) the four men stood
within a foot or two of each other and, as a group, within a few feet of a corner of the
courtyard that was to the side of the buffet table; (3) no one else stood on that side of
the four men or was seen approaching them on that side; (4) although they stood close
to the buffet table, Chief Bradford, who was the closest of the four to the table, stood
mainly with his back to the table; and (5) Stephens at times looked around while the
men spoke. 
          Viewed in the appropriate light, a factfinder could reasonably infer from all of
the above facts


 that appellants, Kelley, and Chief Bradford were speaking in a tone
that could objectively be considered private, that they did not intend to be audible,
and that might not actually have been fully audible, given (1) their location in the
courtyard, (2) the manner in which they were standing there, (3) Stephen’s looking
around periodically, (4) the din around them, and (5) the conversation’s alleged,
possible content. A fact issue thus exists on whether, as the KTRK parties claim,
appellants implicitly consented by speaking in a place and manner for which there
was no objective privacy expectation.
          We distinguish the cases on which the KTRK parties rely because their facts
touching on a privacy expectation differed materially.


 We decline to adopt a rule
that conversations conducted in public, outside areas are per se devoid of any privacy
expectation. See Fordyce v. City of Seattle, 840 F. Supp. 784, 793 (W.D. Wa. 1993)
(“This decision does not mean that there could never be a private conversation in a
public place (for example, in tones not audible to third persons), or that surreptitious
recording without consent is beyond the reach of legislation.”) (emphasis in original),
vacated on same issue on procedural grounds, 55 F.3d 436, 440-42 (9th Cir. 1995).
          Accordingly, we will sustain issue four and the corresponding part of issue
three if the trial judge also erred in granting summary judgment on the ground that the
KTRK parties’ actions were protected by the First Amendment (discussed below).
                    c.       First Amendment Defenses
          In issues five and six, appellants claim that the trial judge erred in rendering
rule-166a(c) and rule-166a(i) summary judgment against the wiretapping claim on the
ground that the federal Constitution’s First Amendment, and the state Constitution’s
Article One, Section Eight, precluded liability and damages.


 See U.S. Const.
amend. I; Tex. Const. art. I, § 8.
          The basic rule established (or noted in dictum) by the cases on which the
KTRK parties rely is that, when a media defendant lawfully obtains truthful
information about a matter of public significance, the First Amendment prohibits the
State from punishing the information’s publication absent a state interest of the
highest order. See Smith v. Daily Mail Publ’g Co., 443 U.S. 97, 103-04, 105-06, 99
S. Ct. 2667, 2671, 2672 (1979); Peavy v. N.Y. Times, Inc., 976 F. Supp. 532, 538
(N.D. Tex. 1997). However, the media “‘has no special immunity from the
application of general laws. [It] has no special privilege to invade the rights and
liberties of others.’” Branzburg v. Hayes, 408 U.S. 665, 683, 92 S. Ct. 2646, 2657
(1972). Nor does the First Amendment guarantee the press a constitutional right of
special access to information not available to the public generally. Branzburg, 408
U.S. at 684, 92 S. Ct. at 2658.
          The KTRK parties expressly recognize in their brief that neither the First
Amendment nor Article One, Section Eight allows them to violate the law. They
instead argue that their actions were lawful. We have already held, however, that
there are fact issues on whether the KTRK parties violated chapter 123 by attempting
to record or by recording the courtyard conversation. Until those fact issues are
resolved, it cannot be determined as a matter of law whether the KTRK parties legally
obtained the audio recording and could thus possibly invoke either constitution’s
protection. See Branzburg, 408 U.S. at 691, 92 S. Ct. at 2662 (in dictum, stating,
“Although stealing documents or private wiretapping could provide newsworthy
information, neither reporter nor source is immune from conviction for such conduct,
whatever the impact on the flow of news.”). For this reason, the above-cited cases
on which the KTRK parties rely are distinguishable. See also Cox Broadcasting
Corp. v. Cohn, 420 U.S. 469, 95 S. Ct. 1029 (1975) (also relied on by the KTRK
parties, but distinguishable because concerned media’s publishing information found
in indictment that was public record). Accordingly, we sustain issues five and six.
          Because we have sustained issues five and six, we also sustain issue four and
the corresponding part of issue three because fact issues exist on the wiretapping
claim. We thus need not reach appellants’ issue 15, concerning the denial of their
new trial motion.
Conclusion
          We reverse the judgment insofar as it rendered a take-nothing judgment on
appellants’ wiretapping claim under chapter 123 and insofar as it granted summary
judgment on the KTRK parties’ defenses of limitations, of laches, under U.S. Const.
amend. I, and under Tex. Const. art. I, § 8. We affirm the summary judgment in all
other respects. We remand the cause.

          We further overrule appellants’ motion for sanctions.
 
 
Sam Nuchia
                                                                                  Justice


Panel consists of Justices Nuchia and Wilson.




Justice Cohen, who retired from the Court before this opinion’s issuance, not
participating.