COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT
WORTH

 

NO. 2-09-335-CV

 


 
 
 IN RE CHASSIDIE L. RUSSELL
 
 
  
 
 
 RELATOR
 
 


 

------------

 

ORIGINAL PROCEEDING

 

------------

 

OPINION

 

------------

This
is an original proceeding in which Relator Chassidie L. Russell contends that
the trial court abused its discretion by entering temporary orders on August 3,
2006, October 19, 2006, and February 15, 2007, and by entering its June 3, 2009
order determining that Janet Harvey and Kenneth Harvey (Athe
Harveys@)
had standing to intervene in the underlying proceeding regarding the
modification of custody.  Chassidie asks
this court to order the trial court to vacate its temporary orders; order the
Harveys to return her daughter, CAIH, and her daughter=s
personal belongings to her; order the trial court to dismiss the Harveys=
pleadings for lack of standing; and order the Harveys to pay all costs of court
and the reasonable and necessary attorney=s
fees incurred by her.  We conditionally
grant the writ.

Background

Chassidie
married David Harvey in February 2000. 
On March 15, 2000, Chassidie gave birth to CAIH.  CAIH=s
biological father is ATrey,@ an
individual with whom Chassidie was involved prior to her marriage to
David.  Chassidie and David divorced on
September 19, 2002.  Under the terms of
the divorce decree, Chassidie and David were named joint managing conservators
of CAIH.  David was granted standard
visitation, and Chassidie was designated the managing conservator with the
right to designate CAIH=s primary residence.  Between September 2002 and July 2005, David
did not exercise his standard visitation. Instead, he would call Chassidie when
he wanted to see CAIH and they would make informal arrangements for
visitation.  David, who is an active
member of the military, moved to California in July 2005.  Thereafter, disputes arose between Chassidie,
David, and the Harveys, David=s
parents.

On
June 15, 2006, David filed a suit to modify the parent-child relationship in
which he requested telephone access to then six-year-old CAIH; that provisions
be made for surrendering CAIH at an airport or to a designated competent adult
due to his military service; and that provisions be made for the surrender of
CAIH to the Harveys for visitation in accordance with section 153.3161 of the
Texas Family Code.  See Act of May
29, 2005, 79th Leg., R.S., ch. 916, ' 13,
2005 Tex. Gen. Laws 3148, 3152.  On July
19, 2006, the associate judge of the 231st District Court held a hearing on
David=s
suit to modify.  Despite the fact that
the Harveys were not parties to the modification proceeding, the associate
judge issued a report on July 19, 2006 ordering counseling for Chassidie, the
Harveys, and CAIH and granting the Harveys possession of CAIH on the first and
third weekends of each month unless the counselor determined that such
possession was not in CAIH=s
best interest.  The associate judge=s
report was reduced to an order dated August 3, 2006.  That order additionally states that A[t]he
Court finds that limited possession of the child by a designated person during
any deployment of David Harvey outside the State of Texas is in the best interest
of the child@ and
thus designates the Harveys Aas
persons who may exercise limited possession of [CAIH] during any period that
David is deployed outside the State of Texas.@  The report and order further stipulated that,
upon the conclusion of David=s Adeployment,@ the
Harveys=
rights to limited possession would terminate and the parties would be bound by
the provisions of the order applicable when a parent is not deployed.  The trial court rendered an additional
temporary order on October 19, 2006 granting the Harveys possession of and
access to CAIH on the first, third, and fifth weekends of each month and
ordering counseling to continue.

Chassidie
began the court-ordered therapy in July 2006 and was subsequently accused by
the counselor, Cathy McGinnis, of committing Agrandparent
alienation.@[1]  The counselor recommended that the Harveys be
given possession of CAIH because of Chassidie=s
behavior in alienating the Harveys from CAIH.[2]

On
December 21, 2006, the Harveys filed a Motion for Enforcement of Possession or
Access and Order to Appear contending that Chassidie had violated the October
19, 2006 temporary order by failing to release CAIH to them at school.[3]  The Harveys filed an Amended Motion for
Enforcement of Possession or Access on January 10, 2007, in which the only
relief they requested was enforcement of the trial court=s
October 19, 2006 temporary order granting them access to CAIH.  On January 26, 2007, the Harveys filed their
first petition to modify the parent-child relationship in which they asked to
be named joint managing conservators and asked for Chassidie to receive only
supervised visitation with CAIH.[4]  After a hearing on January 30, 2007, the
associate judge ruled that CAIH=s Acurrent
living environment in the primary care of the mother, Chassidie L[.] Russell
significantly impairs the child=s
emotional development.@[5]  Accordingly, the judge named the Harveys
primary joint managing conservators of CAIH, ordered that Chassidie surrender
CAIH to them immediately, and ordered that Chassidie be granted only supervised
visitation with CAIH Ain accordance with the
recommendations of . . . McGinnis.@[6]

Chassidie
appealed from the associate judge=s
ruling on February 1, 2007, challenging, among other things, the trial court=s
finding that the Harveys had standing because CAIH=s
current living situation with her significantly impaired CAIH=s
emotional development.  On May 9, 2007,
Chassidie also filed a motion to modify the temporary orders in which she again
challenged the Harveys= standing.  On May 25, 2007, the associate judge signed a
report finding that Chassidie had agreed to the August 3, 2006 temporary orders
along with the Alimited possession during
military deployment@ giving the grandparents
access to CAIH.  She also found that the
Harveys had standing to proceed in the suit under section 102.004(a)(1) of the
family code.  Chassidie=s
counsel had filed a handwritten petition for AHabeas
Corpus Return Child Motion to Strike [and] Set Aside,@
which the associate judge also denied in her May 25, 2007 report.

On
June 13, 2007, the Harveys filed their first amended petition in intervention
in a suit to modify the parent-child relationship in which they asked to be
named joint managing conservators of CAIH and asked that Chassidie be denied
access to CAIH or that she be granted only supervised access to CAIH until
further order of the court.  On August
22, 2007, David filed his first amended petition to modify the parent-child
relationship in which he again requested telephone access to CAIH; that
provisions be made for surrendering CAIH at an airport or to a designated
competent adult due to his military service; and that provisions be made for
the surrender of CAIH to the Harveys for visitation in accordance with section
153.3161 of the Texas Family Code.

The
case was set for final trial in October 2007. 
However, Chassidie filed an appeal of the associate judge=s
rulings, and the court reset the final trial and heard only the appeal of the
associate judge=s reports and temporary
orders.  On June 3, 2009, the trial court
issued an order finding that the Harveys had standing to intervene in the
underlying proceeding.  On September 28,
2009, Chassidie filed this original proceeding complaining of the trial court=s
August 3, 2006, October 19, 2006, February 15, 2007, and June 3, 2009 orders.

Standard
of Review

Mandamus
relief is proper only to correct a clear abuse of discretion when there is no
adequate remedy by appeal.  In re
Columbia Med. Ctr. of Las Colinas, 290 S.W.3d 204, 207 (Tex. 2009) (orig.
proceeding).

A
trial court clearly abuses its discretion when it reaches a decision so
arbitrary and unreasonable as to amount to a clear and prejudicial error of
law.  Walker v. Packer, 827 S.W.2d
833, 839 (Tex. 1992) (orig. proceeding). 
With respect to the resolution of factual issues or matters committed to
the trial court=s discretion, we may not
substitute our judgment for that of the trial court unless the relator
establishes that the trial court could reasonably have reached only one
decision and that the trial court=s
decision is arbitrary and unreasonable.  Id.
at 839B40.  This burden is a heavy one.  In re CSX Corp., 124 S.W.3d 149, 152
(Tex. 2003) (orig. proceeding).  We give
deference to a trial court=s
factual determinations, but we review the trial court=s
legal determinations de novo.  In re
Labatt Food Serv., L.P., 279 S.W.3d 640, 643 (Tex. 2009) (orig.
proceeding).  A trial court abuses its
discretion if it incorrectly interprets or improperly applies the law.  In re Dep=t of
Family & Protective Services., 273 S.W.3d 637, 642B43
(Tex. 2009) (orig. proceeding); Walker, 827 S.W.2d at 840.

Absent
extraordinary circumstances, mandamus will not issue unless relator lacks an
adequate remedy by appeal.  In re Van
Waters & Rogers, Inc.,145 S.W.3d 203, 210B11
(Tex. 2004) (orig. proceeding) (citing Walker, 827 S.W.2d at 839).  Whether a clear abuse of discretion can be
adequately remedied by appeal depends on a careful analysis of costs and
benefits of interlocutory review.  In
re McAllen Med. Ctr., Inc., 275 S.W.3d 458, 464 (Tex. 2008) (orig.
proceeding).  As this balance depends
heavily on circumstances, it must be guided by analysis of principles rather
than simple rules that treat cases as categories.  Id. 
An appellate remedy is adequate when any benefits to mandamus review are
outweighed by the detriments.  In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 136 (Tex. 2004) (orig.
proceeding).  When the benefits outweigh
the detriments, we must conduct further analysis.  Id. 
An appeal is inadequate for mandamus purposes when parties are in danger
of permanently losing substantial rights, such as when the appellate court
would not be able to cure the error; the party=s
ability to present a viable claim or defense is vitiated; or the error cannot
be made part of the appellate record.  Van
Waters & Rogers, Inc., 145 S.W.3d at 210B11; Walker,
827 S.W.2d at 843B44.  An appellate court should also consider
whether mandamus will allow the court to give needed and helpful direction to
the law that would otherwise prove elusive in appeals from final judgments and
whether mandamus will spare litigants and the public the time and money utterly
wasted enduring eventual reversal of improperly conducted proceedings.  In re Team Rocket, L.P., 256 S.W.3d
257, 262 (Tex. 2008) (orig. proceeding).

Because
a trial court=s
temporary orders are not appealable, mandamus is an appropriate means to
challenge them.  See, e.g., In re
Derzapf, 219 S.W.3d 327, 334B35
(Tex. 2007) (orig. proceeding) (granting mandamus relief and directing trial court
to vacate its temporary orders granting grandparents access to grandchild); Little
v. Daggett, 858 S.W.2d 368, 369 (Tex. 1993) (orig. proceeding) (holding
that mandamus is appropriate remedy because temporary order granting visitation
is not appealable); Dancy v. Daggett, 815 S.W.2d 548, 549 (Tex. 1991)
(orig. proceeding) (holding that mandamus is an appropriate remedy because Athe
trial court=s
issuance of temporary orders is not subject to interlocutory appeal@); In
re J.W.L., 291 S.W.3d 79, 83 (Tex. App.CFort
Worth 2009, orig. proceeding) (holding that mandamus is appropriate to
challenge temporary orders because they are not subject to interlocutory
appeal); In re Garza, 153 S.W.3d 97, 100 (Tex. App.CSan
Antonio 2004, orig. proceeding) (holding that mandamus is appropriate to
challenge temporary orders).

The Trial Court
Abused its Discretion by Granting the Harveys Possession of CAIH in the August
3, 2006 and October 19, 2006 Temporary Orders

 

A.   Texas Family Code Section 153.3161

 

Chassidie
contends that the trial court abused its discretion by awarding the Harveys
access and visitation based on the 2005 version of section 153.3161 of the
family code because there was no evidence that David had been or was deployed.  See Act of May 29, 2005, 79th Leg.,
R.S., ch. 916, ' 13, 2005 Tex Gen. Laws
3148, 3152.  David=s
pleadingsCthe
only pleadings on file when the temporary orders were renderedCasked
that his parents be able to exercise his possession under section 153.3161 of
the family code.  That section provided,

Sec. 153.3161.      LIMITED POSSESSION DURING MILITARY
DEPLOYMENT.  (a) In addition to the
general terms and conditions of possession required by section 153.316, if a
possessory conservator or a joint managing conservator of the child without the
exclusive right to designate the primary residence of the child is currently a
member of the armed forces of the state or the United States or is reasonably
expected to join those forces, the court shall:

 

(1)        
permit
that conservator to designate a person who may exercise limited possession of
the child during any period that the conservator is deployed outside of
the United States; and

 

(2)        
if
the conservator elects to designate a person under Subdivision (1), provide in
the order for limited possession of the child by the designated person under
those circumstances, subject to the court=s determination that the limited possession
is in the best interest of the child.

 

(b)     If the court determines that the limited
possession is in the best interest of the child, the court shall provide in the
order that during periods of deployment:

 

(1)        
the
designated person has the right to possession of the child on the first weekend
of each month beginning at 6 p.m. on Friday and ending at 6 p.m. on Sunday;

 

(2)        
the
other parent shall surrender the child to the designated person at the
beginning of each period of possession at the other parent=s residence;

 

(3)        
the
designated person shall return the child to the other parent=s residence at the
end of each period of possession;

 

(4)     the child=s other
parent and the designated person are subject to the requirements of Sections
153.316(5)B(9);

 

(5)     the designated person has the rights and
duties of a nonparent possessory conservator under Section 153.376(a) during
the period that the person has possession of the child; and 

 

(6)     the designated person is subject to any
provision in a court order restricting or prohibiting access to the child by
any specified individual.

 

(c)        
After
the deployment is concluded, and the deployed parent returns to that parent=s usual residence,
the designated person=s right to limited
possession under this section terminates and the rights of all affected parties
are governed by the terms of any court order applicable when a parent is not
deployed.

 

See
id.
(emphasis added).  Thus, the only
pleading on file that could support the trial court=s
decision to grant the Harveys possession and access in July and October 2006 is
under this section.

The
2005 version of section 153.3161, which has since been repealed, conferred
authority upon the trial court to allow a parent to designate an individual to
exercise the parent=s visitation during any
periods in which the parent was deployed outside the United States.  See id.  On October 9, 2007, sixteen months after David
filed his petition to modify in which he requested that the Harveys be given
access to and visitation with CAIH based on his deployment, David testified
that he was stationed in California, that he was not deployed, that he had not
been deployed since he filed the petition to modify, and that he had not
received any orders to be deployed. 
Because the evidence clearly demonstrates that David was not deployed as
required by the statute, the trial court abused its discretion in awarding
access and visitation to the Harveys under former section 153.3161 of the
family code.[7]  See id.  We sustain this portion of Chassidie=s
second issue.

B Failure to
Intervene

 

Chassidie
also argues that there was no other basis for the trial court to award the
Harveys possession and access in the August 3, 2006[8]
and October 19, 2006 temporary orders because the Harveys had not filed any
pleading to intervene in the suit at the time the trial court rendered those
orders.

Texas
Family Code section 153.432(a) allows a Abiological
or adoptive grandparent@ to Arequest
possession of or access to a grandchild by filing: (1) an original suit; or (2)
a suit for modification as provided by Chapter 156.@  Tex. Fam. Code Ann. '
153.432(a) (Vernon 2008).  A trial court
abuses its discretion by awarding relief to a person who has not requested such
relief in a live pleading.  See In re
S.A.A., 279 S.W.3d 853, 856 (Tex. App.CDallas
2009, no pet.); In re Dukes, No. 04-10-00257-CV, 2010 WL 1708251, at *2
(Tex App.CSan
Antonio Apr. 28, 2010, orig. proceeding) (mem. op.); see also Tex. R.
Civ. P. 301.

Texas
is a Afair
notice@
state, which means that all parties are entitled to fair notice of a
claim.  See Tex. R. Civ. P. 45,
47, 48, 50; see generally Horizon/CMS Healthcare Corp. v. Auld, 34
S.W.3d 887, 896B97 (Tex. 2000).  The family code specifically require s
parties to include in their pleadings a Astatement
describing what action the court is requested to take concerning the child and
the statutory grounds on which the request is made.@  See Tex. Fam. Code Ann. ' 102.008(b)(10)
(Vernon 2008).  Moreover, intervenors,
like the Harveys, may intervene only by filing a pleading.  See Tex. R. Civ. P. 60; In re J.D.,
304 S.W.3d 522, 525 (Tex. App.CWaco
2009, no pet.); In re S.M.D., No. 04-08-00602-CV, 2010 WL 647876, at *4
(Tex. App.CSan
Antonio Feb. 24, 2009, no pet.).

The
Harveys did not file any pleadings seeking access to or possession of CAIH
until January 26, 2007 and had nothing on file; therefore, unless another
statute allowed such possession, the trial court abused its discretion by
rendering the August and October 2006 orders granting the Harveys possession of
CAIH.  See In re S.A.A., 279
S.W.3d at 856; Dukes, 2010 WL 1708251, at *2.  We sustain the remainder of Chassidie=s
second issue.

The Trial Court
Abused its Discretion by Rendering the February 15, 2007 Temporary Orders and
June 3, 2009 Order Granting the Harveys Possession of CAIH Because They Lacked
Standing under the Family Code

 

Chassidie
contends that the trial court abused its discretion by awarding access and
possession to the Harveys after they filed their January 26, 2007 pleading
requesting possession because the Harveys lack standing under family code
sections 102.004 and 153.432.  See
Tex Fam. Code Ann. '' 102.004, 153.432(a) (Vernon
Supp. 2009).

Applicable
Law

Standing
is implicit in the concept of subject matter jurisdiction.  See Tex. Ass'n of Bus. v. Tex. Air Control
Bd., 852 S.W.2d 440, 443 (Tex. 1993); In re Kelso, 266 S.W.3d 586,
590 (Tex. App.BBFort
Worth 2008, orig. proceeding).  A party=s
lack of standing deprives the trial court of subject matter jurisdiction and
renders any trial court action void.  See
Taub v. Aquila Sw. Pipeline Corp., 93 S.W.3d 451, 455 (Tex. App.CHouston
[14th Dist.] 2002, no pet.).  A party=s
standing to pursue a cause of action is reviewed de novo.  See In re Kelso, 266 S.W.3d at 590;
Hobbs v. Van Stavern, 249 S.W.3d 1, 3 (Tex. App.CHouston
[1st Dist.] 2006, pet. denied); In re C.R.P., 192 S.W.3d 823, 825 (Tex.
App.CFort
Worth 2006, no pet.).

When
standing has been conferred by statute, the statute itself should serve as the
proper framework for a standing analysis. 
See In re Sullivan, 157 S.W.3d 911, 915 (Tex. App.CHouston
[14th Dist.] 2005, orig. proceeding [mand. denied]).  We review the trial court=s
interpretation of applicable statutes de novo. 
See Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex.
1989).  In construing a statute, our
objective is to determine and give effect to the legislative intent.  See Nat'l Liab. & Fire Ins. Co. v.
Allen, 15 S.W.3d 525, 527 (Tex. 2000). 
If possible, we must ascertain that intent from the language the
legislature used in the statute and not look to extraneous matters for an
intent the statute does not state.  Id.  If the meaning of the statutory language is
unambiguous, we adopt the interpretation supported by the plain meaning of the
provision=s
words.  See St. Luke=s
Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex. 1997).  We must not engage in forced or strained
construction; instead, we must yield to the plain sense of the words the
legislature chose.  See id.

The
interest of parents in the Acare,
custody, and control@ of their children Ais
perhaps the oldest of the fundamental liberty interests@
recognized by the United States Supreme Court. 
See Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060
(2000).  The natural right existing
between parents and their children is one of constitutional dimensions.  See Holick v. Smith, 685 S.W.2d 18, 20
(Tex. 1985); In re C.T.H.S., 311 S.W.3d 204, 208 (Tex. App.CBeaumont
2010, pet. filed); In re Pensom, 126 S.W.3d 251, 254 (Tex. App.CSan
Antonio 2003, orig. proceeding).  AThese
parental interests are a fundamental right protected by the Due Process Clause
of the Fourteenth Amendment to the United States Constitution.@  Pensom, 126 S.W.3d at 254 (citing Troxel,
530 U.S. at 65, 120 S. Ct. at 2060). ATexas
statutes are intended by the Legislature to be in compliance with the
Constitutions of this State and the United States.@  In re K.K.C., 292 S.W.3d 788, 792
(Tex. App.CBeaumont
2009, no pet.) (citing Tex. Gov=t
Code Ann. '
311.021(1) (Vernon 2005)) (footnote omitted).

The
power of a trial court to adjudicate disputes between a parent and a nonparent,
and to enforce its own orders contrary to a parent=s
decisions concerning her children, constitutes state involvement that
implicates the parent=s fundamental liberty
interests in the care, custody, and control of her children.  See Troxel, 530 U.S. at 65B76,
120 S. Ct. at 2059B65.  The jurisdictional requirement of standing
helps ensure that a parent=s
constitutional rights are not needlessly interfered with through litigation. See
generally Pensom, 126 S.W.3d at 255 (A[J]urisdictional
prerequisite of standing [in the grandparent access context] serves to ensure
that the statutory scheme is narrowly tailored so that a parent=s
personal affairs are not needlessly intruded upon or interrupted by the trauma
of litigation by any third party seeking access.@).  As the United States Supreme Court explained
in Troxel, A[S]o long as a parent
adequately cares for his or her children (i.e., is fit), there will normally be
no reason for the State to inject itself into the private realm of the family
to further question the ability of that parent to make the best decisions
concerning the rearing of that parent=s
children.@  Troxel, 530 U.S. at 68B69,
120 S. Ct. at 2061 (citing Reno v. Flores, 507 U.S. 292, 304, 113 S. Ct.
1439, 1448 (1993)).

A.  Waiver of Standing

 

The
Harveys argue that Chassidie has waived the right to complain about standing by
her signature on the associate judge=s
July 19, 2006 report and by her attorney=s
agreement as to the form of the August 3, 2006 temporary order.[9]  We disagree with both propositions.

Section
102.004(a)(2) of the family code requires that both parents either (1) file a
petition requesting managing conservatorship for grandparents under that
section or (2) consent to such a suit. 
Tex. Fam. Code Ann. '
102.004(a)(2).  Neither Chassidie nor
David had petitions on file requesting such relief.  Nowhere on the associate judge=s
report does it reflect that Chassidie agreed that the Harveys have standing or
that she agreed to underlying facts that would show their standingBBthus
consenting to their later interventionBBor
that she entered into an agreement with any of the other parties at the end of
the July 19, 2006 contested hearing.[10]  Her and her counsel=s
signatures on the associate judge=s
report appear to be no more than an agreement for Chassidie to attend
counseling while David=s petition requesting access
under section 153.3161 of the family code was pending.  In fact, the associate judge=s
report contemplates that the counselor could determine that the Harveys were
not entitled to exercise David=s
possession and access at all pending the resolution of his suit.  Thus, we conclude and hold that Chassidie=s
and her counsel=s mere signatures alone on
the July 19, 2006 associate judge=s
report do not constitute an agreed order conferring standing on the Harveys
prior to their filing pleadings in intervention.  See, e.g., Oryx Energy Co. v. Union
Nat=l
Bank of Tex., 895 S.W.2d 409, 416B17
(Tex. App.BBSan
Antonio 1995, writ denied); cf. In re D.C., 180 S.W.3d 647, 649B50
(Tex. App.BBWaco
2005, no pet.) (holding that agreement as to Aform
and content@ did
not constitute agreed judgment).

Likewise,
Chassidie=s
counsel=s
signature on the August 3, 2006 order memorializing the associate judge=s
July 19, 2006 report, under the heading, AAPPROVED
AS TO FORM ONLY,@ does not constitute an
agreement that the Harveys had standing under section 102.004.  See In re Marriage of Jordan, 264
S.W.3d 850, 853 (Tex. App.BBWaco
2008, no pet.); Baw v. Baw, 949 S.W.2d 764, 766B67
(Tex. App.BBDallas
1997, no pet.).

We
therefore conclude and hold that neither Chassidie=s
and her counsel=s signatures on the July 19,
2006 report, nor her counsel=s
signature on the August 3, 2006 temporary orders, constitute an agreement by
Chassidie that the Harveys had standing to seek grandparent possession and
access or managing conservatorship as to CAIH.

B.  No Standing Under Family Code Section 153.432

Chassidie
argues that family code section 153.432 applies only to Abiological
or adoptive grandparents,@ and because the Harveys are
neither, they lack standing to seek access. 
See Tex Fam. Code Ann. '
153.432(a).  Section 153.432 confers
standing only upon a Abiological or adoptive
grandparent@ to
file suits requesting possession of or access to a grandchild.  See id.  Chassidie testified that ATrey,@ not
David, was CAIH=s biological father.[11]  Moreover, there is no evidence in the record
establishing that David adopted CAIH. 
The evidence demonstrates that the Harveys are David=s
parents alone.[12]  Because there is no evidence that the Harveys
are CAIH=s
biological or adoptive grandparents, we hold that they lack standing to seek
grandparent access under section 153.432 of the family code.  See id; Derzapf, 219 S.W.3d at
331B32.

C.  No Standing under Family Code Section 102.004

Chassidie
also contends that the Harveys lacked standing under family code section
102.004.  See Tex. Fam. Code Ann. '
102.004.

Section
102.004(a) states,

(a) In addition to
the general standing to file suit provided by Section 102.003[[13]],
a grandparent, or another relative of the child related within the third
degree by consanguinity, may file an original suit requesting managing
conservatorship if there is satisfactory proof to the court that:

 

(1) the order
requested is necessary because the child's present circumstances would
significantly impair the child's physical health or emotional development; or

 

(2) both parents, the
surviving parent, or the managing conservator or custodian either filed the
petition or consented to the suit.

 

See id. ' 102.004(a) (emphasis
added).

 

Chassidie
contends that the Harveys lack standing because they are not grandparents and
because they fail to meet the requirements of sections 102.004(a)(1).[14]  We construe the standing statutes in a manner
consistent with the constitutional principles stated in Troxel.  See Troxel, 530 U.S. at 65B76,
120 S. Ct. at 2059B65; Pensom, 126 S.W.3d
at 255B56.  In the provision at issue here, the
legislature chose the words, Aa
grandparent, or another relative of the child related within the third degree
by consanguinity.@  See Tex. Fam. Code Ann. '
102.004(a) (emphasis added).  Thus, the
2007 version, the version applicable here, conferred standing upon Aa grandparent,
or another relative of the child related within the third degree by
consanguinity.@  See Act of May 28, 2007, 80th Leg.,
R.S., ch. 1406, ' 2, 2007 Tex. Gen. Laws
4814, 4815 (emphasis added).

The
Texas Government Code provides that A[t]wo
individuals are related to each other by consanguinity if:  (1) one is a descendant of the other; or (2)
they share a common ancestor.@  See Tex. Gov=t.
Code Ann. '
573.023 (Vernon 2004).  The Government
Code also provides that A[t]wo individuals are
related to each other by affinity if: 
(1) they are married to each other; or (2) the spouse of one of the
individuals is related by consanguinity to the other individual.  See id. '
573.024 (Vernon 2004).

We
presume each word was used for a purpose, and give each word effect if it is
reasonable and possible to do so.  See
Tex. Workers= Comp. Ins. Fund v. Del
Indus., Inc., 35 S.W.3d 591, 593 (Tex. 2000).  By the inclusion of the word Aanother,@ the
legislature made it clear that it intended for grandparents or other relatives
to be limited to those individuals related to the child within the third degree
of consanguinity.  See id.; see
also Acker v. Tex. Water Comm'n, 790 S.W.2d 299, 301 (Tex. 1990) (AA
statute is presumed to have been enacted by the legislature with complete
knowledge of the existing law and with reference to it.@).  Had the legislature not intended to limit the
term Agrandparent@ to
individuals related within the third degree by consanguinity, it would not have
needed to includ the word, Aanother.@  Instead, the legislature could have phrased
the section to read, Aa grandparent or relative of
the child related within the third degree by consanguinity.@  See Tex. Workers=
Comp. Ins. Fund, 35 S.W.3d at 593.  Because there is no evidence that the Harveys
were related to CAIH within three degrees of consanguinity, they lack standing
under section 102.004(a).  See
Tex. Fam. Code Ann. ' 102.004(a); Derzapf,
219 S.W.3d at 328 (holding that stepgrandfather, who was neither a biological
nor an adoptive grandparent, lacked standing to seek access to
stepgrandchildren); A.M.S, 277 S.W.3d at 98B99
(holding that stepuncle lacked standing under section 102.004).

Even
if the Harveys could be considered Agrandparents@
under section 102.004(a), they still failed to overcome their burden to
demonstrate that CAIH=s then-present circumstances
Awould
significantly impair [CAIH=s]
physical health or emotional development.@  See Tex. Fam. Code Ann. '
102.004(a)(1); Derzapf, 219 S.W.3d at 333; In re M.J.G., 248
S.W.3d 753, 757 (Tex. App.CFort
Worth, 2008, no pet.).

The
evidence at the hearings held in October 2007 was as follows:  David testified that he was in the military
and had been stationed in California since July 2005.  He testified that the Harveys are his
parents, that he would usually take CAIH to see them every other weekend prior
to moving to California, and that he would talk to CAIH on the phone generally
once a week after he moved to California. 
David testified that he contacted Chassidie and asked for extended
visitation with CAIH in December 2005 and that the visitation lasted the entire
week and a half that he was in Fort Worth. 
David then testified that problems arose in the spring of 2006 when his
communications with Chassidie became more sporadic, when she began not
returning all of his telephone calls, and when he asked for extended summer visitation
in a letter dated June 13, 2006.  He
testified that on June 15, 2006, he filed his petition to modify the
parent-child relationship.

David
testified that he was concerned when CAIH told him that he and his parents were
strangers to her; however, he acknowledged that after only a few minutes CAIH
went back to calling him Daddy and to calling the Harveys Grandma and
Grandpa.  He testified that CAIH told him
that she had a new father and that she had also told him that Chassidie had
told her that she has three fathers.

Chassidie
testified that prior to David=s
moving to California in July 2005, he did not exercise standard visitation;
instead, he chose to call her when he wanted to see CAIH, and they would
arrange a visit.  Chassidie testified
that after David moved to California, the Harveys began to harass her family.[15]  Specifically, the Harveys (1) would often go
to Chassidie=s
house and leave messages on the door, (2) had blocked Chassidie and Michael=s
driveway and their garage on more than one occasion, and (3) showed up at
Chassidie and Michael=s house unannounced stating
they would be exercising David=s
visitation even though David was not in Texas at the time.  Chassidie testified that she called the
police and reported the Harveys=
behavior because she feared for CAIH=s
safety.  Chassidie testified that the
Harveys had been involved in a physical altercation with her grandparents, the
Greenwoods, which had also resulted in a police report.  Chassidie testified that she did not receive
David=s
June 6 or 13, 2006 summer visitation letters until June 29, 2006 because the
stamp on the front of the letters indicated that they would be Aavailable
for pickup after 9:00 on the 29th.@  Chassidie admitted to having contacted CAIH=s
biological father, Trey, upon the advice of her then-attorney, Don Driver.  She testified that she stopped at Trey=s
parent=s
house for about twenty to twenty-five minutes on her way to dinner.  Chassidie testified that she received a call
the next day after church and subsequently went with CAIH to Trey=s
parent=s
house where she introduced Trey as CAIH=s
biological father.  Chassidie testified
that the meeting lasted between one and a half to two hours.

Kim
Cassidy, CAIH=s
first grade teacher at Norwood Elementary in Burleson during the 2006B2007
school year, testified that CAIH was a quiet, Aeasy
going little girl@ who was just like all the
other girls and was Aright on target@
academically.  Cassidy testified that
CAIH told her that she was worried that the Harveys were going to try to kidnap
her.  She also testified that Chassidie
had told her that she was in contact with CAIH=s
biological father and would attempt to terminate David=s
rights if Athat
is what it took.@  Cassidy testified that CAIH was always well
groomed and on time.  She testified that
after the Harveys obtained custody of CAIH, CAIH told her that she missed her
mother.

Shelly
Grant, the owner of Performers Unlimited in Burleson, testified that she had
known Chassidie since CAIH was three years old. 
She stated that CAIH had been participating in the gym=s
programs since she was three years old, when she started attending ballet and
tap classes one night a week.  She
testified that CAIH later moved into gymnastics as well.  Grant testified that CAIH attended Performers=
summer camp in 2005 and that she attended classes every day after school
beginning in the fall of 2005 until the Harveys removed her from the program in
January 2007.

Grant
testified that she believed Chassidie was an exemplary mother based on the way
Chassidie interacted with CAIH, on how well-behaved and well-prepared CAIH was
in class, and on her observations of Chassidie and CAIH over the course of four
years.  She testified that CAIH was a
very likeable child with many friends and that she was happy and always
well-groomed.

Grant
also testified that CAIH was anxious, upset, and distraught over the visits
with the Harveys and that CAIH had told her that she did not like visiting with
the Harveys and had asked her why she had to visit with them.  Grant testified that Chassidie and Michael
were at every one of CAIH=s performances. She testified
that she had never seen David or either of the Harveys at any of CAIH=s
performances and that a list of all performance schedules was available on
Performers= web
page.  Furthermore, Grant testified that
she had never spoken to David or to Jan Harvey and that her only conversation
with Ken Harvey was a phone conversation during the last week of January 2007
in which he informed her that the Harveys had obtained custody of CAIH and that
she would no longer be attending the program.

Cathy
McGinnis, the court-ordered psychologist, testified that in her opinion,
Chassidie was committing Agrandparent alienation@ of
the Harveys because CAIH could tell that her mother did not like the
Harveys.  McGinnis based her opinion
regarding alienation upon the various police reports filed by Chassidie
alleging that the Harveys were harassing her family before the August 2006 and
October 2006 temporary orders for access and possession were issued and the two
police reports filed after the orders were issued.  However, McGinnis acknowledged that it would not
have been appropriate behavior for the Harveys to go to Chassidie=s
house uninvited and block her garage or driveway, to get into a physical
altercation with Chassidie=s
grandparents, or to repeatedly go to Chassidie=s
house uninvited to leave messages.  She
also stated it would have been appropriate for Chassidie to ask the Harveys to
stop the foregoing behavior.

McGinnis
testified that Chassidie would not accept McGinnis=s
assessment that she was alienating the Harveys. 
She testified that she believed that Chassidie was making Apoor
progress@ in
being able to accept the Harveys=
involvement in CAIH=s life because she had only
seen Chassidie Abeing somewhat cordial@ with
the Harveys at the time CAIH was brought into therapy with no other interaction
between Chassidie and the Harveys.

However,
McGinnis also acknowledged that she saw Chassidie and CAIH acting very
affectionately with one another. 
Moreover, she also acknowledged that CAIH frequently asked why she was
taken away from her mother; asked when she would be able to return home; and
told her that she missed her mother, her baby brother, and her stepfather; and
said she wanted to go home. McGinnis also acknowledged that she believed that
it was ideally in the best interest of every child to be with his or her mother
rather than with grandparents.

When
questioned about her background and training in grandparent alienation or
parental alienation, McGinnis testified that she did not know about any
literature discussing grandparent alienation, that she had not attended any
seminars specifically addressing parental alienation, and that she was unable
to give any details about training or education that she had received on the
subject other than to generally state that parental alienation was discussed in
play therapy workshops that she had attended. 
However, McGinnis asserted that she had researched parental alienation
on the internet and had a file on the subject which contained the two articles
she had found, one from Wikipedia and the other from Paskids.com.

Amy
Candler, a social worker with Family Court Services, was asked by the court to
give a recommendation as to custody of CAIH. 
She testified that she had not been retained to perform a social study
and had based her oral recommendation to the trial court to grant possession of
CAIH to the Harveys based on one interview each of the Harveys, McGinnis, and
Chassidie.  She testified that she had
also made a visit to the Harveys=
home and had made contact or had conversations with ALeslie@ and
Kim Cassidy, at Norwood Elementary, Valerie and Renee Carr, Valarie Hearn, and
the Johns, who were Trey=s parents.[16]  Candler acknowledged that she did not
interview David, Michael, or CAIH or visit Chassidie and Michael=s
home prior to making her recommendation to the trial court.  Candler testified that her recommendation was
that Aif
the mother cannot encourage a relationship between the [Harveys] and [CAIH]@
then the Harveys Aneed to be [CAIH=s]
primary caretakers until [Chassidie] can make some changes in the way that she
handles the relationship between [CAIH] and other people that love her@ and
until Chassidie Alearned how to share@
CAIH with the Harveys.

Candler
further testified that she had made the same recommendation in January 2007 and
that she had also recommended that Chassidie be given supervised visitation of
CAIH.  Candler acknowledged that besides
the one hour interview of Chassidie in January, she had only spoken to Chassidie
on the phone twice and had Acoincidentally@
been in the family visitation room during one of Chassidie=s
visits with CAIH, where she saw the two being very affectionate with one another.  Regardless, she testified that she had no
information that would make her change her prior recommendation.  She acknowledged that CAIH frequently asked
why she was taken away from her mother, asked when she would be able to return
home, and told her that she missed her baby brother, Michael, and Chassidie and
wanted to go home.  However, Candler
testified, AI
can't recommend a change until someone provides me with enough information to
determine or convince me that [Chassidie] is willing to share [CAIH] with the
people she loves.@

Candler
testified that she was unaware of the five or six police reports for harassment
and trespassing that Chassidie had filed against the Harveys and, had she known
about the instances, those may have caused her to be concerned about the
Harveys.

Phillip
Hawkins, a social worker contracted by Family Services to supervise community
visits between Chassidie and CAIH beginning in September 2007, testified that
he had supervised six weekly visits between the two and that they were Asignificantly
connected@;
that CAIH was always delighted to see her mother; that CAIH was sad when
Chassidie would leave at the end of the visits; and that CAIH would tell her
mother that she loved her and that she missed her.  Hawkins testified that he believed that
Chassidie and CAIH were close based on his observations of the two interacting.

Our
review of the entire record demonstrates that that there is no evidence that
CAIH=s
circumstances in October 2007 would significantly impair her physical health or
emotional development.  The court-ordered
psychologist and Family Court Services social worker both based all of their
conclusions on Chassidie=s refusing access and
possession to the Harveys, who were never legally entitled to such.  There was no evidence as to the effect of the
supposed grandparent alienation on CAIH other than that she missed her mother
when she was with the Harveys.  In this
case, all of the focus was on the effect on the Harveys, which is not the
intent of the statute, which focuses on the child and the child=s
best interest.  See Tex. Fam. Code
Ann. '
102.004(a).  Accordingly, the trial court
abused its discretion by determining that the Harveys had standing under
section 102.004(a)(1) of the family code.[17]  See Derzapf, 219 S.W.3d at 328; M.J.G.,
248 S.W.3d at 757.  We sustain Chassidie=s
first issue.  Because of our disposition
of Chassidie=s
first two issues, we need not address her third issue.  See Tex. R. App. P. 47.1.

Conclusion

Having
concluded that the trial court abused its discretion by determining that the
Harveys had standing and by entering the August 3, 2006, October 19, 2006,
February 15, 2007, and June 3, 2009 orders, we conditionally grant Chassidie=s
petition for writ of mandamus and order the trial court to vacate its August 3,
2006, October 19, 2006, February 15, 2007 and June 3, 2009 orders and to
dismiss the pleadings filed by the Harveys for lack of standing.  We order the Harveys to immediately return
CAIH and all of her personal belongings to Chassidie at her residence at 908
Mistflower Avenue, Burleson, Johnson County, Texas, 76028, no later than 5:00
p.m. on Friday, August 27, 2010.[18]  Chassidie=s
request for attorney=s fees remains pending in
the trial court.  Only if the trial court
fails to comply with this court=s
order will we issue the writ.

 

 

TERRIE LIVINGSTON

CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

 

DELIVERED:  August 25, 2010











[1]During an October 2007
hearing, McGinnis admitted that, although she believed Chassidie was alienating
the Harveys, she knows of no literature on grandparent alienation, only parent
alienation.





[2]In their response in
this court, David and the Harveys acknowledge that A[n]either David, [the
Harveys] [n]or their attorneys proposed [grandparent alienation] as a ground
for relief.@





[3]The Harveys= petition describes a
physical and verbal altercation between them and Chassidie=s grandparents
over the transfer of possession.





[4]Although the pleading
is entitled ASupplemental Petition
to Modify the Parent-Child Relationship,@ the Harveys had not filed or been parties to
any prior petition to modify, including the petition to modify filed by David
on June 15, 2006.





[5]The associate judge=s rulings were
reduced to an order, which was signed on February 15, 2007.





[6]At the hearing on
January 30, 2007, the associate judge ordered Chassidie to remain in the
courtroom while the Harveys took possession of CAIH at Chassidie=s residence.  Chassidie was not able to say goodbye to CAIH
and did not see her for the next five weeks.





[7]The August 3, 2006
temporary orders recite that A[t]he parties have
agreed to the terms of this order as evidenced by their signatures on the
Associate Judge=s recommendation on
file in this cause.@  But nowhere in the associate judge=s report, which
Chassidie and her counsel signed, is section 153.3161 or David=s possible deployment
mentioned.  Nor does the report contain
any explicit Aagreement@ as to factual
allegations that would support standing under the family code.  See, e.g., Oryx Energy Co. v. Union
Nat=l Bank of Tex., 895 S.W.2d 409,
416B17 (Tex. App.BBSan Antonio 1995,
writ denied) (holding that signature underneath heading AApproved and Agreed,@ standing alone, does
not establish consent judgment).





[8]Chassidie refers to
this order as the AJuly 19, 2006@ order; however,
although the hearing occurred on July 19, 2006, the date of the associate judge=s report, the order
memorializing the report was not signed by the trial court until August 3,
2006.





[9]See note 7, supra.





[10]This case is thus
distinguishable from In re J.W.L., 291 S.W.3d 79, 85B86 (Tex. App.BBFort Worth 2009,
orig. proceeding), in which the mother joined, and thus consented to, the
grandparents= suit for managing
conservatorship before she died during the pendency of the suit.





[11]Cathy McGinnis, Amy
Candler (a social worker), Chassidie, and Michael Russell (Chassidie=s current husband)
all testified about Chassidie=s meeting with CAIH=s biological father
to determine if he would be willing to establish his paternity of CAIH and then
relinquish his rights so that Michael could adopt CAIH.  Chassidie and Michael testified that they
were uneasy about approaching CAIH=s biological father but did so based on the
advice of their counsel, who has since resigned his Texas law license.  The Harveys did not object to or challenge
any of this testimony.





[12]Although the Harveys
have not raised this issue, we note that David was CAIH=s presumed father
under the divorce decree.  However, a
presumed father is not necessarily a biological father, and our state statutes
recognize this.  See In re Marriage of
M.C., 65 S.W.3d 188, 191 (Tex. App. CAmarillo 2001, no pet.).  The legislature knows how to word a statute
to distinguish between a presumed and a biological parent.  Thus, simply because David was a presumed
father does not make the Harveys Abiological@ grandparents for purposes of family code
section 153.432.  Moreover, the Harveys
chose to use CAIH=s extremely limited
contact with her biological father against Chassidie in this proceeding, which
is tantamount to an admission that they are not CAIH=s biological
grandparents.





[13]The Harveys did not
and have not asserted standing under any of the general provisions of section
102.003.





[14]We have already
determined that the Harveys did not have standing under section
102.004(a)(2).  See, supra,
discussion under AA.  Waiver of Standing.@





[15]Chassidie=s husband, Michael,
also corroborated the instances when the police were called to their residence
to deal with the Harveys and testified that the Harveys told him that they were
going to take CAIH away from Chassidie and Michael.





[16]Candler did not
elaborate on her conversations with these seven individuals or testify that any
of these individuals provided her with information that led her to make her
oral recommendation to the trial court.





[17]For the same reasons
the Harveys did not have standing to intervene under section 102.004(b).  See Tex. Fam. Code Ann. ' 102.004(b).





[18]Our judgment will
issue in duplicate; one version will identify CAIH by initials as in this
opinion, and another will identify her by her full name in the event a nonparty
must rely on it to enforce our judgment.