ORYX ENERGY COMPANY (F/K/A
Sun Exploration & Production
Company), Appellant,

v.

UNION NATIONAL BANK
OF TEXAS, Appellee.

No. 04–93–00116–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 25, 1995.

Rehearing Denied March 9, 1995.

Richard L. Nelson, Stacy R. Obenhaus, Cynthia Hollingsworth, Joanne Early, Gardere & Wynne, L.L.P., Dallas, Emilio Davila, Jr., Laredo, for appellant.

William A. McKenzie, R. Bredt Norwood, McKenzie and Baer, Dallas, Patrick J. Pape, Pape, Murray, McClenehan & Sparr, San Antonio, Richard G. Morales, Jr., Person, Whitworth, Ramos, Borchers & Morales, Laredo, Jeffrey I. Kavy, George H. Spencer, Jr., Clemens & Spencer, San Antonio, for appellee.

Before BUTTS,[1] RICKHOFF and HARDBERGER, JJ.

## OPINION

HARDBERGER, Justice.

This is an appeal from a summary judgment on a breach of contract claim. Union National Bank of Texas ("the Bank") sued Santa Fe Capital Corporation ("Santa Fe"), R. O'Neal Gray ("Gray"), and Oryx Energy Company (f/k/a Sun Exploration & Production Company) ("Oryx") based upon a note, the breach of contract arising from an assignment, and on tort theories of liability. The trial court granted a summary judgment in favor of the Bank on the breach of contract claim, denying Oryx's cross-motion for summary judgment on that claim. The court severed the remaining claims. Oryx appeals that judgment alleging five points of error complaining of the trial court's actions in granting the Bank's motion for summary judgment, denying Oryx's motion for summary judgment, in awarding the Bank $1,050,000, and in denying Oryx's motion to transfer venue and motion to sever. We reverse and remand the case for trial.

### Facts

Oryx leased an office building in Longview, Texas. The building was owned by Santa Fe. Santa Fe had borrowed money from the bank to buy the building. Santa Fe had given the Bank a promissory note secured by a deed of trust on the office building, as well as a personal guarantee from Gray. Accordingly, in this appeal Oryx is the tenant of the

---

1. Justice Shirley W. Butts not participating.

building; the Bank is the lender/mortgagee; and Santa Fe is the landlord/debtor.

Santa Fe's purchase of the building was financed through a purchase money loan from Union National Bank. In connection with the purchase money loan, the Bank and Santa Fe executed the following agreements in October 1986:

(1) A promissory note evidencing Santa Fe's indebtedness, providing for repayment to the Bank in the amount of $2,250,-000, and indicating that security for the loan was a deed of trust on the building.

(2) A deed of trust to secure the indebtedness evidenced by the promissory note.

Oryx was not a party to the promissory note and deed of trust. However, because Oryx had been leasing the building for several years prior to the purchase, the Bank, Oryx and Santa Fe entered into a subordination and non-disturbance agreement to protect the bank's security interest and Oryx's right to use and possess the leased premises. In that agreement, Oryx acknowledges that its rights to the office building are subject and subordinate to the Bank's security interest in the property. Likewise, the Bank agreed that Oryx's use and occupancy of the building would not be disturbed by the Bank so long as Oryx was not in default.

In 1988 Oryx decided to close its Longview office. Oryx then had to deal with the lease they had signed with Santa Fe. Oryx decided to buy out the lease and sent an agent, Mark Latham, to the Bank to discuss the buy out. However, the Bank told Latham that Santa Fe was the owner of the building and therefore the buy out of the lease should be negotiated with Santa Fe, and not the Bank. On November 1, 1988 Oryx and Santa Fe reached an agreement. Under the terms of the agreement, Oryx paid $1,050,000 to Santa Fe and Gray. Oryx paid $750,000 of the lease buy out proceeds to Santa Fe and $300,000 was paid directly to Gray, Santa Fe's president. The Bank claims that it did not learn of the agreement between Oryx and Santa Fe and Gray until August 1989. The Bank also claims that it had no knowledge of nor did it approve the payment of $300,000 directly to Gray. Among other things, Oryx contends that the Bank knew about the deal when it happened and knew of and approved of the agreement to pay $300,-000 directly to Gray.

In July and August 1989, Santa Fe failed to make its note payment to the Bank. On August 22, 1989, the Bank contacted Oryx to inquire about the status of the lease and whether Oryx was making its lease payments to Santa Fe. The Bank claims that they did not learn until then that Oryx had bought the lease out from Santa Fe. Santa Fe failed to make any other payments on the note. The Bank subsequently brought suit against Santa Fe, Gray and Oryx.[2]

The Bank filed a motion for partial summary judgment on its contract claims against Oryx. Oryx filed a response and cross motion for summary judgment. On December 19, 1990, the trial court granted partial summary judgment to the Bank on its contract cause of action and awarded the Bank $1,050,000.00 as damages against Oryx. The court also denied Oryx's cross-motion for summary judgment. Oryx filed a motion to reconsider the trial court's partial summary judgment. Oryx's motion to reconsider the summary judgment was heard and denied by order signed on January 8, 1993. The order denying the motion for reconsideration also severed the partial summary judgment from the remaining claims.[3] Oryx appeals from this judgment alleging five points of error.

---

**2.** During this litigation both Santa Fe and Gray have gone into bankruptcy.

**3.** The bank argues in its brief that this court may not consider any of the evidence presented by Oryx in its motion to reconsider the summary judgment because the trial court denied the motion to reconsider and Oryx has failed to assign error on that ruling. We disagree with this characterization of the record. The trial court's order of January 8, 1993 specifically states that the court gave leave to Oryx to file an amended

Motion for Reconsideration and gave the Bank the right to respond thereto. The court also recites that all of the summary judgment evidence attached to or filed with Oryx's second motion for summary judgment, its motion for reconsideration, and its amended motion for reconsideration were "deemed timely filed" for the purposes of reconsidering the court's prior summary judgment decision.

The trial court granted the parties leave to supplement the record, thus denial of the motion

### Breach of Contract

In its first point of error, Oryx argues that the trial court erred in granting the Bank's motion for summary judgment on its breach of contract claim. In its second point of error, Oryx alleges that the trial court further erred by denying its motion for summary judgment. The central issue is whether Oryx breached contractual obligations with the Bank by paying future rents or lease buy-out proceeds directly to its landlord, Santa Fe.

Initially, Oryx argues that the Bank failed to meet its summary judgment burden by failing to prove the existence of an agreement between Oryx and the Bank which imposed upon Oryx the duty to pay rent to the Bank. According to Oryx, its only obligations under the lease and the subordination agreement, the only contracts to which Oryx was a party, were to make its rent payments to its landlord.

The respective rights and obligations of Oryx, Santa Fe, and the Bank are set forth in the following contracts:

(1) A lease dated April 28, 1982, between Oryx and the original owners of the office building located at 1201 Northwest Loop 281, in Longview, Texas.

(2) The subordination and non-disturbance agreement signed by Santa Fe, Oryx, and the Bank.

(3) The deed of trust signed by Santa Fe and the Bank.

 When construing written contracts, it is this court's duty to ascertain the true intentions of the parties as expressed in the instruments. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). This court must examine the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none are rendered meaningless. *Universal C.I.T. Credit Corp. v. Dan-*

*iel,* 150 Tex. 513, 243 S.W.2d 154, 158 (1951). All of the provisions must be considered with reference to the whole instrument and no single provision taken alone will be given controlling effect. *Coker,* 650 S.W.2d at 393.

 If written agreements can be given a certain definite legal meaning, then the contract is not ambiguous and the court will construe the agreement as a matter of law. *Coker,* 650 S.W.2d at 393; *R & P Enterprises,* 596 S.W.2d at 519. A contract will be deemed ambiguous when its meaning is uncertain or is reasonably susceptible to more than one meaning. *Skelly Oil Co. v. Archer,* 163 Tex. 336, 356 S.W.2d 774, 778 (1962).

 Whether a contract is ambiguous is a question of law for the court to decide looking at the contract as a whole in light of the circumstances present when the contract was entered. When a contract contains an ambiguity, the granting of the summary judgment is improper because interpretation becomes a fact issue. *Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex.1980).

 The only contract to which both Oryx and the Bank were parties was the subordination agreement. We must look to the subordination agreement to see what contractual obligations Oryx had with the Bank. The fourth paragraph of the subordination agreement provides as follows:

WHEREAS, the Deed of Trust contains provisions collaterally assigning the Lease and absolutely assigning all rents, profits and proceeds from the Lease to Lender. . . .

The first provision of the subordination agreement reads as follows:

1. *SUBORDINATION.* The Lease, and the rights of Tenant in, to or under the Lease and the Land and the Premises, are hereby subjected and subordinated and shall remain absolutely, in all respects and for all purposes subject, subordinate and

---

to reconsider meant only that, in light of the supplemented record, the trial court's decision would remain the same. The trial court having granted leave to supplement and having reviewed the summary judgment record, Oryx did not need to assign error as to the denial of its motion to reconsider. *See, e.g. Cove Investments,*

*Inc. v. Manges,* 602 S.W.2d 512, 517 (Tex.1980). Oryx properly preserved their complaint concerning the trial court's denial of the summary judgment and all of the evidence filed in connection with Oryx's motion to reconsider is properly before this court.

junior to the lien of the Deed of Trust, and to the rights and interest of the Lender under the Deed of Trust, as fully and with the same effect as if the Deed of Trust had been duly executed, acknowledged and recorded, and the indebtedness secured thereby had been fully disbursed prior to the execution of the Lease or possession of the Land or Premises by Tenant, or its predecessors in interest.

Clearly, the subordination agreement makes reference to an assignment. The agreement also provides that Oryx's rights would be subordinate to the rights and interests of the Bank under the deed of trust. The agreement does not specifically provide that Oryx is to pay its rent directly to the Bank in the event of a default. The Bank acknowledges as much, but argues that its right to have Oryx pay the rents directly to it arise as a result of the assignment of rents clause in the deed of trust.

■ The assignment of rents clause is contained in the deed of trust which was executed by the Bank and Santa Fe. As previously noted, Oryx was not a party to this agreement. However, the assignment was specifically referenced in the subordination agreement. The assignment of rents clause provides as follows:

> *Assignment of Rents, Profits, etc.* All of the rents, ... profits, revenue, income, and other benefits derived from the mortgaged property or arising from the use or enjoyment of any portion thereof or from any lease or agreement pertaining thereto and liquidated damages following default under such leases, ... (hereinafter called the "Rents"), are hereby absolutely and unconditionally assigned to Beneficiary, to be applied by Beneficiary in payment of Indebtedness. Notwithstanding any provision of this Deed of Trust or any other Loan Instrument which might be construed to the contrary, the assignment in this Section is an absolute assignment and not merely a security interest. Until terminated by the Beneficiary as herein provided, as a result of an Event of Default, Grantor shall have a license to collect and receive all Rents as trustee for the benefit of Beneficiary.

Under the assignment of rents clause, the Bank gives Santa Fe a license to collect rents from Oryx. Santa Fe has the license to collect rents until the license is terminated by the Bank as a result of an event of default. Revocation of Santa Fe's license to collect rents from Oryx was a precondition to the activation of the assignment of rents clause. Oryx maintains that the Bank had not revoked Santa Fe's license to collect rents from Oryx at the time of the lease buyout. The Bank argues that it had revoked Santa Fe's license to collect rents. Thus, there is a contested issue of material fact and the summary judgment in favor of the Bank should not have been granted. *See* TEX. R.CIV.P. 166a; *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

■ The Bank also argues that the assignment of rentals clause was an absolute assignment and thus there was no need to satisfy any condition precedent to be entitled to receive the rent directly from Oryx. Texas adheres to the lien theory of mortgages. *Taylor v. Brennan*, 621 S.W.2d 592, 593 (Tex. 1981). Under this theory, the mortgagee is not the owner of the property and is not entitled to its possession, rents, or profits. Therefore, mortgagees often assign to themselves the mortgagor's interest in all rents falling due after the date of the mortgage. In construing assignment of rents clauses, Texas follows the common law rule that an assignment of rents does not become operative until the mortgagee obtains possession of the property, impounds the rents, secures the appointment of a receiver, or takes some other similar action. *Taylor*, 621 S.W.2d at 594 (citing *Simon v. State Mutual Life Assur. Co.*, 126 S.W.2d 682 (Tex.Civ.App.—Dallas 1939, writ ref'd), and *McGeorge v. Henrie*, 94 S.W.2d 761 (Tex.Civ.App.—Texarkana 1936, no writ)).

■ Texas court recognize that parties to a mortgage may agree to an absolute assignment. *Taylor*, 621 S.W.2d at 594. An absolute assignment of rents does not create a security interest but instead passes title to the rent contingent on default. *Id.* Courts are reluctant to construe an assignment of rents clause as an absolute assignment for

public policy reasons. *Id.* (citing *Prudential Ins. Co. of America v. Liberdar Holding Corp.,* 74 F.2d 50 (2d Cir.1934)).

In determining whether an assignment of rents clause creates an absolute assignment or a security interest the court must ascertain the intent of the parties. *Taylor,* 621 S.W.2d at 594–95. In determining the parties' intent, a court must examine both the assignment of rents clause and the security agreement executed contemporaneously with it. *Id.* If the assignment clause requires affirmative conduct by the mortgagee, it creates a pledge to secure the indebtedness. *Id.*

In the present case, the deed of trust states that the assignment is "absolute" and goes on to say that the assignment is "not merely a security interest." The subordination agreement signed by Oryx refers to the assignment as an absolute assignment. This language would tend to establish that the intent of the parties was to create an absolute assignment.

On the other hand, Article III of the deed of trust states that it is a security agreement. The deed of trust provides that the Bank cannot collect rents unless it terminates Santa Fe's license to collect rents. When an assignment provides that the mortgagee cannot secure rents until it has taken certain action after the default, the clause will create a collateral assignment of rents. *See Taylor,* 621 S.W.2d at 594–95; *see also In re Village Properties Ltd.,* 723 F.2d 441, 443 (5th Cir.1984); *FDIC v. International Property Management,* 929 F.2d 1033, 1035 (5th Cir.1991). It is also important to note that the assignment of rents clause at issue in this case does not permit Oryx to make rent payments directly to the Bank. *See International Property Management,* 929 F.2d at 1037. These facts would militate in favor of construing the assignment of rents in this deed of trust as collateral or a security interest.

The Bank's own actions in sending the Oryx representative to Santa Fe to work out the details of the buy out are somewhat inconsistent with the Bank's position that there is an absolute assignment in favor of the Bank. The absolute assignment would mean that Santa Fe has no interest in the matter and that the Bank has the total interest. Yet the Bank told Oryx to negotiate the buy out with Santa Fe and not the Bank. Such action on the part of the Bank would be some evidence that the Bank itself was using the assignment of rents as collateral or a security interest.

We find that the provisions of the deed of trust relating to the assignment of rents are reasonably susceptible of more than one meaning and thus ambiguous. Therefore, summary judgment was improper. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

Oryx's first point of error is sustained and its second point of error is overruled. Due to our disposition of the first and second points of error there is no need to address Oryx's third point.

## Motion to Transfer Venue

In its fourth and fifth points of error Oryx complains about the denial of its motion to transfer venue and the motion to sever the Bank's claim for default under the promissory note. We disagree with Oryx.

The Bank filed this lawsuit in Webb County. In addition to its claim for breach of contract, the Bank asserted claims against Oryx, Santa Fe, and Gray for fraud, conspiracy, gross negligence, and breach of the duty of good faith and fair dealing. All of the defendants moved to transfer venue. After the defendants filed their motion to transfer venue, the Bank filed an amended petition alleging that Santa Fe breached a promissory note. Oryx moved to sever the claim. The trial court denied the motions to sever and to transfer venue.

Oryx argues that the trial court erred in denying its motion to sever and then in denying its motion to transfer venue. The gist of Oryx's argument is that the Bank's claim for breach of promissory note, which was added in an amended petition after the motion to transfer was filed, was a separate and independent cause of action against only Santa Fe and should have been severed. Further, if the trial court had severed the additional claim against Santa Fe, then it would have

had no choice but to grant the motion to transfer venue. We will first review the decision not to sever.

■ Trial courts are granted broad discretion in deciding whether to sever a lawsuit into separate suits. *See* TEX.R.CIV.P. 41; *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990). For a severance to be proper, more than one cause of action must be involved in the controversy, the severed cause must be one that can be asserted independently, and the severed action must not be so interwoven with the remaining action that they involve identical facts and issues or, in some circumstances, they relate to the same subject matter. *McRoberts v. Tesoro Sav. & Loan Ass'n*, 781 S.W.2d 705, 706 (Tex.App.—San Antonio 1989, no writ).

■ In the present case, we are unwilling to say that the trial court abused its discretion by failing to sever the claims. The claim on the note is clearly intertwined with the Bank's other causes of action thus warranting an adjudication of all causes of action in one proceeding. The default on the note triggered this litigation. The facts concerning all of the claims alleged by the Bank concerns identical facts surrounding one loan transaction and the security for the loan. Each of the causes of action relate to the recovery of proceeds which were to be paid toward the balance due on the note. The amount of recovery on the note would necessarily be determined in relation to any amounts paid by Oryx to Santa Fe and Gray that the trial court finds are to be paid against the balance of the note.

■ Next we consider whether the trial court was correct in finding that venue was proper in Webb County. In a suit on a contract which states that it is to be performed in a certain county, venue is proper in the specified county. TEX.CIV.PRAC. & REM.CODE ANN. § 15.035(a) (Vernon 1986); *Gonzalez v. Nielson*, 770 S.W.2d 99, 102 (Tex. App.—Corpus Christi 1989, writ denied).

In this case, the Bank sued Santa Fe for default on the note and on obligations arising out of the deed of trust. The note provides that the borrower, Santa Fe, promises to pay the Bank at the office of the Bank in Laredo, Webb County, Texas. Additionally, the note provides that it shall be performed and is performable in Webb County, Texas. Since the note specifically states that it is to be performed and is performable in Webb County, we find that venue is proper in Webb County, Texas. Oryx apparently concedes that without a severance venue is proper in Webb County.

Therefore we overrule Oryx's fourth and fifth points of error.

### Effect of Notation "Approved and Agreed"

■ Finally, the Bank argues that Oryx has waived its right to complain about the summary judgment on appeal because it agreed to entry of the judgment. The January 8, 1993 order denying Oryx's motion to reconsider and affirming the summary judgment in favor of the Bank on its breach of contract claim contains the notation "Approved and Agreed." According to the Bank, Oryx has agreed to the entry of the summary judgment against it for $1,050,000.00.

■ A party may not attack a judgment to which it has agreed, absent allegation and proof of fraud, collusion, or misrepresentation. However, the notation "Approved", with nothing more, does not establish a consent judgment. *Bexar County Criminal Dist. Attorney's Office v. Mayo*, 773 S.W.2d 642, 644 (Tex.App.—San Antonio 1989, no writ); *Long v. Long*, 814 S.W.2d 227, 228 (Tex.App.—San Antonio 1991, no writ). In *Mayo*, we held that the notation "Approved", with nothing more, does not indicate a consent judgment and a voluntary relinquishment of the right to appeal. We also stated that "[n]othing in the body of the judgment suggests that the case had been settled or that judgment was rendered by consent. There are no other indications of agreement in the record." *Id.* However, we also stated in dicta that the better practice would be to use the terms "Approved as to Form Only" or "Approved and Agreed" or "Approved as to Form and Substance."

The phrase "Approved as to Form and Substance", standing alone, is insufficient to establish a consent judgment. *First American Title Ins. Co. v. Adams,* 829 S.W.2d 356, 364 (Tex.App.—Corpus Christi 1992, writ denied). Likewise, we are unpersuaded that the notation "Approved and Agreed", standing alone, establishes a consent decree. In this case, nothing in the record or the judgment indicates that the parties entered or even contemplated a settlement or agreed judgment. In fact the order itself expressly contemplates appeal of the summary judgment. In order for this court to hold that the notation "Approved and Agreed" transforms a contested summary judgment into a consent judgment we would be unnecessarily elevating form over substance. Courts should not decide cases based on the inclusion or omission of "magic words." Instead decisions should be based upon the facts as recited in the record as a whole. *See S & L Restaurant Corp. v. Leal,* 883 S.W.2d 221, 235 (Tex.App.—San Antonio 1994, writ pending) (Hardberger, J., concurring).

The judgment of the trial court is reversed and the case is remanded for trial.