DeCLARIS ASSOCIATES, Appellant,

v.

McCOY WORKPLACE SOLUTIONS, L.P., Appellee.

No. 14–10–00051–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 3, 2011.

**558**

Maurice L. Bresenhan, Jr., Houston, for Appellant.

Clifford L. Harrison, Houston, for Appellee.

Panel consists of Justices BROWN, BOYCE, and JAMISON.

## OPINION

MARTHA HILL JAMISON, Justice.

DeClaris Associates appeals from an adverse judgment in its breach-of-contract lawsuit against McCoy Workplace Solutions, L.P. DeClaris sued McCoy seeking placement fees under a personnel-placement contract. After the trial court denied DeClaris's motion for a directed verdict, holding that the contract was ambiguous, a jury found that McCoy had not breached the contract, and the court entered judgment in accordance with the jury's verdict. On appeal, DeClaris contends that it is entitled to judgment as a matter of law based on the unambiguous contract and, in the alternative, that the trial court's judgment should be reversed and remanded because the court erred in instructing the jury on "time of compliance" under the contract. We affirm.

1. The record is silent as to whether the account-executive opening in 2004 was filled by a different candidate at that time or left unfilled. The record is also silent as to why

### Background

DeClaris Associates is a personnel-placement agency. McCoy Workplace Solutions sells office furniture, office products, and related services. In December 2003, DeClaris and McCoy executed a "Fee Schedule and Guarantee" under which McCoy agreed to pay DeClaris a fee "contingent on the engaging of a candidate referred by DeClaris." The agreement is a brief, one-page document. Rita DeClaris, owner of DeClaris Associates, signed the contract on behalf of her company, and Stella Graham, McCoy's human-resources representative, signed on behalf of McCoy.

In early 2004, McCoy issued a job order to DeClaris for candidates to fill an open account-executive position. In response, DeClaris sent several resumes to McCoy, including one for Shelly Hoffman. In April 2004, Hoffman interviewed with Graham and another McCoy representative. DeClaris also contacted three references provided by Hoffman, and Hoffman completed a personality assessment as part of her candidacy for the position at McCoy. McCoy, however, did not then hire Hoffman.[1]

According to the testimony of Graham and Scott Skrabanek, McCoy's chief financial officer and chief operating officer, Hoffman, as a salesperson for an employee-benefits company, began calling on Skrabanek in 2006. Skrabanek indicated that he was so impressed with Hoffman's skills that he suggested she contact McCoy's vice president of sales at the time, David Downing, about a sales position with McCoy. According to Skrabanek, Downing then went through the normal interviewing and hiring process with Graham, and Hoffman was hired. He tes-

Hoffman was not hired, although there is an indication in Graham's testimony that a decision-making process occurred in 2004, and a decision was made not to hire Hoffman.

tified that Hoffman never mentioned to him that two years before, she had been referred by DeClaris for a position at McCoy.

Graham testified that in 2006, she did not remember Hoffman from their contact two years prior, and Hoffman did not initially mention it. When Hoffman filled out an application for employment with McCoy in 2006, Graham contacted a different recruiter, David Seeley, to conduct the initial screening of Hoffman as a candidate. After apparently speaking with her and checking her references, Seeley reported favorably on Hoffman. Hoffman then interviewed with Downing and was hired as an account executive with an annual base salary of $40,000 plus commissions of $2,083.33 per month.

In her 2006 application, Hoffman listed Skrabanek as the person who referred her for the position. Graham explained that during the application process, she checked McCoy's records for any prior information regarding Hoffman, but there were no records for Hoffman because the company discarded such records after one year. Further according to Graham, she was not contacted by Hoffman in the intervening years between Hoffman's 2004 and 2006 applications for employment. Graham also stated that DeClaris did not follow up regarding Hoffman during that time period.

When DeClaris subsequently learned that Hoffman had been hired by McCoy, it demanded a placement fee pursuant to the "Fee Schedule and Guarantee." When McCoy refused, DeClaris sued for breach of contract.

Prior to trial, DeClaris moved for summary judgment, which the trial court initially granted but then denied on reconsideration. At the close of the evidentiary portion of the trial, DeClaris moved for a directed verdict, which the trial court also denied. DeClaris's position in both motions was that (1) the contract unambiguously provided that DeClaris was entitled to a fee if it referred a job candidate that McCoy hired and (2) the evidence was equally clear that DeClaris referred a job candidate that McCoy hired.

During the conference on submission of the jury charge, the trial judge specifically stated that the contract between the parties was ambiguous. The court also determined that it should instruct the jury regarding the time of compliance for a contract when the contract does not specify a particular time frame. The charge submitted to the jury consisted of three questions covering liability, damages, and attorney's fees. The jury answered only question no. 1 on liability. That question reads in its entirety as follows:

### Question No.1

**Did McCoy fail to comply with the terms of the Fee Schedule and Guarantee?**

> In answering this question, it is your duty to interpret the following language of the agreement:
>
> > "Our fees, payable by the employer, are contingent on the engaging of a candidate referred by DeClaris Associates."
>
> You must decide its meaning by determining the intent of the parties. Consider all the facts and circumstances surrounding the making of the agreement, the interpretation placed on the agreement by the parties, and the conduct of the parties.
>
> > Compliance with an agreement must occur within a reasonable time under the circumstances unless the parties agreed that compliance must occur within a specified time and the parties intended compliance within such time

to be an essential part of the agreement.

**Answer "Yes" or "No."**

The jury responded "no" to question 1. The parties then filed a joint motion for judgment in accordance with the verdict, and the court entered a judgment, titled "Agreed Judgment," which both parties approved as to form and substance. On appeal, McCoy contends that DeClaris has waived its right to appeal, and DeClaris argues that the trial court erred in submitting any issues to the jury and in instructing the jury on time of compliance.

### Waiver of Appeal

As an initial matter, McCoy argues that DeClaris waived its right to appeal by moving for entry of judgment in conformity with the jury's verdict and by approving the judgment as to form and substance. We will begin our analysis by addressing the latter contention. For a judgment to be considered an agreed or consent judgment, such that no appeal can be taken therefrom, either the body of the judgment itself or the record must indicate that the parties came to some agreement as to the case's disposition; simple approval of the form and substance of the judgment does not suffice. See *Shafer v. Gulliver*, No. 14-09-00646-CV, 2010 WL 4545164, at *2 (Tex.App.-Houston [14th Dist.] Nov. 12, 2010, no pet. h.) (mem.op.); *Chang v. Nguyen*, 81 S.W.3d 314, 316 n. 1 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Gahunia v. Acorn Private Ltd., Co.*, No. 14-98-01259-CV, 2000 WL 144077, at *1-2 (Tex. App.-Houston [14th Dist.] Feb. 10, 2000, pet. denied) (not designated for publication).

Here, as indications that the judgment was based on consent or agreement to the disposition, McCoy points to the fact that the title of the judgment was "Agreed Judgment" and DeClaris's counsel signed the judgment as approved to both form and substance. Under the circumstances of this case, neither factor indicated that the parties had reached an agreement regarding disposition or that DeClaris waived its right to appeal the judgment. The record demonstrates that the case was contested throughout the proceedings, from initial pleadings to motions for summary judgment and directed verdict to trial by jury. Indeed, the judgment itself reflects that it is "[b]ased upon the verdict of the jury," not on any settlement or agreement between the parties. See *Shafer*, 2010 WL 4545164, at *2 (holding "entry requested" language in judgment did not convert judgment into one based on consent or agreement); *Gahunia*, 2000 WL 144077, at *2 (stating that the record revealed the parties did not agree on the case's outcome as evidenced by the contested trial on the merits). Consequently, DeClaris did not abandon its right to appeal by signing the judgment.

As stated, McCoy additionally argues waiver of the right to appeal because DeClaris participated in a joint motion requesting entry of judgment in conformity with the jury's no-liability verdict. Again, we disagree with this assertion under the circumstances presented in this case. In some circumstances, a party that moves for entry of judgment without appropriate qualifying language waives its right to appeal the judgment; this is so because generally a party may not request that the trial court take an action and then complain on appeal when the court does what it was asked to do. See, e.g., *Litton Indus. Prods., Inc. v. Gammage*, 668 S.W.2d 319, 322 (Tex.1984). The Texas Supreme Court, however, has recognized that there must be ways for a party that "desires to initiate the appellate process" to "move the trial court to render judgment without being bound by its terms." *First Nat'l Bank*

*of Beeville v. Fojtik*, 775 S.W.2d 632, 633 (Tex.1989) (per curiam).

Here, DeClaris did not include a disclaimer in the joint motion as recommended in *Fojtik*.[2] However, given the consistently contested nature of the proceedings, as well as the simplicity of the issues involved—a single breach-of-contract claim went to the jury on which DeClaris completely lost—it is unlikely that the judge or McCoy was misled into thinking DeClaris did not plan to appeal simply because DeClaris joined McCoy's motion for judgment. *Cf. Nipper–Bertram Trust v. Aldine I.S.D.*, 76 S.W.3d 788, 794 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (holding record did not demonstrate disagreement with judgment where party did not file motion for new trial and counsel acknowledged in oral argument that party affirmatively agreed to judgment). The judge had, in fact, already ruled against DeClaris's positions on the few key issues several times (denying DeClaris's motions for summary judgment and directed verdict and overruling its objections to the charge). The trial court had made its rulings, and DeClaris had consistently expressed disagreement with those rulings. *Cf. In re Bahn*, 13 S.W.3d 865, 875 (Tex.App.-Fort Worth 2000, orig. proceeding) ("A party should not be es-topped from challenging a court's order when the party provides to the court a proposed order following what it believes was the court's ruling at the hearing, and the court signs it."); *John Masek Corp. v. Davis*, 848 S.W.2d 170, 174–75 (Tex.App.-Houston [1st Dist.] 1992, writ denied) (holding that "merely provid[ing] a draft judgment to conform to what the court had announced would be its judgment" does not result in waiver of an appeal).

In short, by joining the motion for judgment under the circumstances of this case, DeClaris cannot be said to have invited the trial court into error. *See John Masek*, 848 S.W.2d at 174–75. As suggested in *Fojtik*, DeClaris was clearly desirous of initiating the appellate process and therefore moved the court to render judgment according to the court's prior rulings on the simple issues involved. 775 S.W.2d at 633. DeClaris did not waive its right to appeal.

## *Ambiguity*

In its first five issues, DeClaris asserts that the trial court erred in submitting any issues to the jury, and in not granting judgment in its favor, because the agreement between the parties is unambiguous and the key evidence was undisputed.[3]

---

**2.** The Fojtiks included the following language in their motion for entry of judgment: "While Plaintiffs disagree with the findings of the jury and feel there is a fatal defect which will support a new trial, in the event the Court is not inclined to grant a new trial prior to the entry of judgment, Plaintiffs pray the Court enter the following judgment." *Fojtik*, 775 S.W.2d at 633. "Plaintiffs agree only as to the form of the judgment but disagree and should not be construed as concurring with the content and result." *Id.* The supreme court concluded that this disclaimer sufficed to preserve the Fojtiks' ability to appeal as they appropriately sought entry of a final judgment that would allow the appellate process to begin.

**3.** DeClaris makes no distinction in its arguments among its first five issues. Specifically, those issues assert that the trial court erred in: (1) entering the final judgment and overruling the motions for summary judgment and directed verdict because the contract was unambiguous; (2) not granting a new trial where the evidence conclusively established McCoy failed to comply with the unambiguous terms of the agreement; (3) granting McCoy's motion to reconsider the summary judgment favoring DeClaris; (4) finding the contract to be ambiguous; and (5) submitting to the jury the issue of the parties' intent when the contract was unambiguous.

According to DeClaris, it was entitled to a placement fee under the express terms of the contract because (1) it referred a candidate to McCoy and (2) McCoy hired that candidate. More specifically, DeClaris insists that having referred Hoffman to McCoy as a candidate for employment in 2004, DeClaris was entitled to its 20 percent placement fee when McCoy hired Hoffman in 2006. Under DeClaris's reading of the contract, it is inconsequential that two years had passed and there was no evidence that DeClaris itself played any role in Hoffman's 2006 application for employment with McCoy.

■ The issue of whether a contract is ambiguous is a question of law that we review de novo. *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 705 (Tex.2008). If an agreement is worded such that it can be given a definite legal meaning or interpretation, it is not ambiguous and can be construed as a matter of law. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex.1996). If its meaning is uncertain, or it is reasonably susceptible to more than one interpretation, then it is ambiguous and its meaning must be resolved by the finder of fact. *Id.* In construing a contract in a business context, we bear in mind the particular business activity sought to be served and need not strain to apply rules of construction in an effort to avoid ambiguity at all costs. *Id.*

An ambiguity in a contract may be said to be patent or latent. Patent ambiguity in a contract is ambiguity that is apparent on the face of the contract; latent ambiguity is ambiguity that only becomes apparent when a facially unambiguous contract is applied under particular circumstances.

*Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995).[4]

■ The portion of the agreement that the court determined to be ambiguous, and thus submitted to the jury for interpretation, reads as follows: "Our fees, payable by the employer, are contingent on the engaging of a candidate referred by DeClaris Associates." McCoy asserted in the trial court and asserts on appeal that this sentence does not clearly and unambiguously govern a situation such as that presented in this case, where an individual applied for a position with McCoy, two years after having been referred by DeClaris, after having recontacted McCoy in her capacity as a salesperson for a different company, and with DeClaris playing no apparent role in the new application and subsequent hiring of the individual. We agree with McCoy and the trial court that these circumstances revealed a latent ambiguity in the agreement between the parties. It is unclear from the contract language whether DeClaris would be entitled to a placement fee under these circumstances. Although DeClaris indisputably did refer Hoffman in 2004, in response to a job order from McCoy, it clearly did not refer her again in 2006 when Hoffman and McCoy reconnected without DeClaris's participation. The contract does not expressly address these circumstances. Accordingly, the trial court did not err in refusing to grant judgment as a matter of law to DeClaris or in determining to submit the interpretation of the contract to the jury. DeClaris's first five issues are overruled.

### Jury Instruction

■ In its sixth issue, DeClaris contends that the trial court erred in submit-

---

4. The court in *National Union* provided the following example in describing "latent ambiguity": "[I]f a contract called for goods to be delivered to 'the green house on Pecan Street,' and there were in fact two green houses on the street, it would be latently ambiguous." 907 S.W.2d at 520 n. 4.

ting to the jury an instruction regarding time of compliance under the contract. We give trial courts wide latitude in assessing the propriety of explanatory instructions and definitions. *H.E. Butt Grocery Co. v. Bilotto*, 985 S.W.2d 22, 23 (Tex. 1998). So long as the charge is legally correct, a trial court possesses broad discretion regarding the submission of questions, definitions, and instructions. *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex.1999). We may not reverse a judgment based on error in the submission of a jury instruction unless we determine that the error probably caused the rendition of an improper judgment. *See Kiefer v. Cont'l Airlines, Inc.*, 10 S.W.3d 34, 37 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (citing Tex.R.App. P. 44.1(a)(1)).

 DeClaris specifically argues that there was no evidence that compliance within a specified time period was an essential part of the agreement. DeClaris insists instead that the only evidence relevant to time of compliance established that it was not "of the essence."[5] On this basis, DeClaris concludes that the trial court mislead the jury into believing that compliance within a particular time frame was an essential part of the agreement.

We disagree. Contrary to what DeClaris's arguments suggest, the trial court did not in fact instruct the jury either that time was of the essence to the agreement or that compliance within a specified time was an essential part of the agreement. The court's instruction actually did the opposite; it explained to the jury that where parties do not agree to a specific time for compliance or performance, and such is not made an essential part of the agreement, then compliance need only occur within a reasonable time. This is a correct statement of the law. *See WesternGeco, L.L.C. v. Input/Output, Inc.*, 246 S.W.3d 776, 784 (Tex.App.-Houston [14th Dist.] 2008, no pet.); *Gen. Elec. Capital Corp. v. ICO, Inc.*, 230 S.W.3d 702, 713 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). Consequently, DeClaris's arguments are without merit, and we overrule its sixth issue.[6]

We affirm the trial court's judgment.

---

5. The only evidence that DeClaris points to indicated that Graham, McCoy's human-resources representative, could have requested changes to the contract before signing it but did not do so.

6. In the trial court, DeClaris's counsel objected to the time-of-compliance instruction by stating that the agreement itself unambiguously dealt with reasonable time of compliance. However, the agreement is completely silent in regards to time of compliance.