

**In the**
**Court of Appeals**
**Second Appellate District of Texas**
**at Fort Worth**

_____

No. 02-17-00251-CV

_____

IN THE ESTATE OF STEVEN DOUGLAS NIELSEN, DECEASED

On Appeal from Probate Court No. 2
Tarrant County, Texas
Trial Court No. 2015-PR01535-2

Before Sudderth, C.J.; Gabriel and Kerr, JJ.
Opinion by Chief Justice Sudderth
Gabriel, J., filed a dissenting opinion.

## MEMORANDUM OPINION

This appeal arises from a dispute between a wife and her deceased husband's mistress over his estate. The wife, Appellant Linda Nielsen, appeals the trial court's granting of summary judgment in favor of the mistress, Appellee Maria Footman. We affirm the trial court's judgment.

## Background

### I. Factual background.

Nielsen was married to Decedent Steven Nielsen for 40 years. They had three daughters together who were raised in the couple's home in Austin. Decedent's work required him to spend the majority of his time traveling in various parts of the country, and he only returned to Austin every other weekend to spend time with Nielsen and their daughters. Although Nielsen had her suspicions, she maintained that she was unaware of Decedent's longtime affair with Footman until November 2014.

Footman tells a different story. In Footman's version, Decedent and Nielsen separated in 2000, after which they had no romantic involvement, and Decedent only visited the Austin home every other weekend in order to spend time with his daughters. According to Footman, she and Decedent met and started their relationship in 2002, and she lived with Decedent in Atlanta, Georgia, until 2007, when they moved to Arlington, Texas. Decedent was still living with Footman in Arlington at the time of his death.

In November 2014, doctors diagnosed Decedent with terminal cancer. He purportedly informed Nielsen about his condition by email. In that same email he also informed her that he intended to file for divorce. Decedent filed for divorce shortly thereafter.

On December 5, 2014, Decedent executed a Last Will and Testament (the Will) that left 70% of his estate to Footman and, through a testamentary trust, 10% to each of his three daughters.

As the divorce proceedings continued, it became clear to Nielsen that a significant amount of community property and funds had been given to Footman over the years. After she learned about the Will and also that Decedent had executed a power of attorney designating Footman as his agent, she became concerned that Footman would have access to the community estate. According to Nielsen, these concerns motivated her to work out a settlement in the divorce proceedings that would provide for their daughters through the divorce settlement rather than through Decedent's Will. Also according to Nielsen, she and Decedent reached an agreement which provided for the daughters by awarding Nielsen the majority of the community estate. Nielsen expected Decedent to contemporaneously execute the settlement documents and an instrument changing his estate plan.

As it turns out, her expectation proved only half right. Decedent changed his estate plan, but he did not contemporaneously execute a settlement agreement in the divorce. On April 10, 2015, Decedent executed the "First Codicil to Last Will and

Testament" (the Codicil) that altered the disposition of his residual estate to leave it all to Footman. The Codicil expressly stated, "I make no further provisions for my three daughters . . . because of other arrangements having been made during my lifetime."

Jack Garbo, the attorney who drafted the Will and Codicil, testified in a deposition that Decedent requested and signed the Codicil in order to effectuate his agreement with Nielsen to settle the divorce proceedings. Garbo recalled meeting with Decedent for his execution of the Codicil and described Decedent's explanation to Garbo that "[Decedent] felt that they were far enough along that he had great hopes that they were going to sign [a settlement agreement], and by doing so, that it was going to change . . . the amount that was being given to [Nielsen] on behalf of the girls and . . . that that seem[ed] to be a suggestion made by them, that . . . he would take the girls out of the will . . . ." Garbo also testified, "And that is why, again, we changed . . . the will and had the codicil created was because of the settlement agreement in progress," and that Decedent "had hopes that he would live long enough to sign that very agreement and then everything would have been in sync."

When Decedent passed away on May 14, 2015, the settlement agreement in the divorce proceedings remained unsigned, and Nielsen and Decedent were still married.

## II. Procedural history.

On June 9, 2015, Footman filed an application to probate the Will and the Codicil.

On July 1, 2015, Nielsen filed a contest that alleged that Decedent lacked the requisite mental capacity to execute the Will or the Codicil and, alternatively, that he was unduly influenced to execute the Will and Codicil. On September 9, 2016, Nielsen filed a petition for a declaratory judgment and a first amended contest in which she sought a declaration (1) that the Codicil revoked the Will and (2) that the Codicil was a conditional will in that it was dependent upon the Nielsens' execution of the divorce settlement agreement. Therefore, under Nielsen's argument, Decedent died intestate. Nielsen requested the trial court to find that Decedent died intestate, appoint Nielsen as the independent administrator of his estate, and determine that Nielsen and her three daughters were his heirs.

On February 9, 2017, the trial court signed an "Agreed Order" denying Nielsen's Application for Partition of Community Property. In it, the trial court stated that the application was denied because a settlement of the issues had been announced at an earlier hearing on the matter:

> IT IS ORDERED, *based upon the agreement of counsel at the February 1, 2017 hearing, the parties intend to submit an agreed proposed order detailing the partition of the community property*; therefore the Application at this time is DENIED.

> IT IS FURTHER ORDERED, that if the parties fail to submit an agreed order within thirty (30) days of the Court's Order on Linda Nielsen's Second Amended Application for Family Allowance, the Court will reconsider the Application.

[Emphasis added.] Both Nielsen's and Footman's attorneys' signatures appear below the trial court's signature underneath a heading styled, "AGREED:" (without

qualification). The trial court signed the Order on Second Amended Application for Family Allowance on March 2, 2017. From the record, it appears that an agreed order detailing the partition of the community property was not submitted within 30 days of that order.

Instead, later that month the trial court heard competing motions for summary judgment on the issue of whether the Codicil was conditional, as Nielsen contended, or unconditional, as Footman urged. The trial court granted Footman's motion, denied Nielsen's, and declared as a matter of law that the Codicil was not conditional. One month later, the case proceeded to trial on the issue of the will contest. At the conclusion of trial, the jury found that Decedent had testamentary capacity and was not under undue influence at the time he executed the Will and the Codicil.

In May 2017, Footman filed a motion requesting the trial court to enter a final judgment admitting the Will and the Codicil to probate, appoint her as the independent executor and issue letters testamentary to her as such, and order the transfer of assets from Decedent's estate to her. On June 28, 2017, the trial court signed an "Agreed Order Probating Will and Partitioning and Distributing Assets." After reciting that the order was "[b]ased upon the Court's prior rulings and the Jury's unanimous verdict" and that it was "a final appealable judgment," the trial court then (1) admitted the Will and the Codicil to probate, (2) appointed Footman as the independent executrix of the estate and ordered the issuance of letters testamentary to her, and (3) ordered the partition and distribution of the estate assets between Nielsen

6

and Footman, as they agreed. On the last page of the "Agreed Order," under the word "AGREED:" (again, without qualification), the signatures of both attorneys—Footman's and Nielsen's—appeared.

On appeal, Nielsen concedes that the bulk of the order—two of three pages—under the heading "II. Partition and Distribution" was the result of an agreed partition between the parties that was not reached within the 30 days referenced in the March 2 order but was reached after the jury verdict.[1] However, according to Nielsen, the remaining portion of the order—the first page—was not agreed to.

## Discussion

Nielsen's brief does not contain an "Issues Presented" section, as required by the rules of appellate procedure. Tex. R. App. P. 38.1(f) ("The appellant's brief must, under appropriate headings and in the order here indicated, contain . . . (f) *Issues*

---

[1]Both parties have submitted affidavits by trial counsel and documents attached thereto purportedly evidencing the settlement negotiations that took place between the time the jury delivered its verdict and the date the agreed order was signed. But although both parties argue that we can consider these affidavits and documents because of their purported relevance to our determination of jurisdiction over this appeal, we cannot because the issue is not one of jurisdiction but of waiver. *See, e.g.*, *Baw v. Baw*, 949 S.W.2d 764, 766 (Tex. App.—Dallas 1997, no writ). For purposes of determining waiver, we cannot consider evidence that is outside the appellate record. *See Bencon Mgmt. & Gen. Contracting, Inc.*, 178 S.W.3d 198, 210 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("With limited exceptions . . . , an appellate court may not consider matters outside the appellate record. The attachment of documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal and, therefore, the documents cannot be considered." (citation omitted)). Even if we did consider these affidavits, they contain no evidence of fraud, collusion, or misrepresentation. *Baw*, 949 S.W.2d at 766 (requiring such evidence to overcome waiver of issues for appeal of an agreed order).

*Presented*. The brief must state concisely all issues or points presented for review."). Nevertheless, from the argument presented, Nielsen appears to raise one issue—a challenge to the trial court's summary judgment ruling denying her request for a declaratory judgment and finding that the Codicil was not conditional. In response, Footman argues that Nielsen cannot appeal the summary judgment ruling because it was subsumed in the agreed order and that Nielsen is precluded from appealing an agreed order. Because we agree with Footman, we affirm the trial court's judgment without reaching Nielsen's arguments regarding the conditional nature of the Codicil.

When an interlocutory summary judgment ruling is not severed into a separate cause of action, it becomes final when it merges into the final judgment in the case. *Roccaforte v. Jefferson Cty.*, 341 S.W.3d 919, 924 (Tex. 2011) ("The final judgment necessarily replaced the interlocutory order, which merged into the judgment."). So, although Nielsen presents her appeal as one from the summary judgment ruling, it is in reality an appeal from the agreed order. *Id.*

Generally, a party is precluded from appealing a judgment to which it has agreed without a showing of fraud, collusion, or misrepresentation. *Baw*, 949 S.W.2d at 766. Consent to the entry of a judgment "waives any error, except for jurisdictional error, contained in the judgment," leaving nothing to properly present for appellate review. *Id.* As the Dallas court has explained, "[t]he rationale of such a rule is that a party will not be allowed to complain on appeal of an action or ruling which she invited or induced." *Boufaissal v. Boufaissal*, 251 S.W.3d 160, 162 (Tex. App.—Dallas

8

2008, no pet.). But, as our sister court has held, for waiver to occur under this theory, agreement should be explicit and unmistakable. *Baw*, 949 S.W.2d at 766.

Appellate courts are somewhat divided on the issue of whether a judgment that appears to be agreed but has no recitation of the agreement in the body of the order itself can be challenged on appeal. However, there is some consensus among the courts as to what terminology, standing alone, is insufficient to establish the existence of an agreed order.

For example, we have previously held that counsel's signature to an order beneath the heading "APPROVED AS TO FORM," without more, was insufficient to render it an agreed order and thereby waive the party's right to appeal the order. *In re Ezukanma*, 336 S.W.3d 389, 397–98 (Tex. App.—Fort Worth 2011, orig. proceeding) (op. on reh'g), *order granting mandamus vacated on other grounds by In re Office of the Attorney Gen.*, 422 S.W.3d 623 (Tex. 2013); *see also Westridge Villa Apartments v. Lakewood Bank & Tr. Co.*, 438 S.W.2d 891, 894 (Tex. App.—Fort Worth 1969, writ ref'd n.r.e.) (holding that approval as to the form of the judgment did not render it a consent judgment). And our sister courts seem to agree that the phrase "Approved as to Form" does not create an agreed judgment. *Cisneros v. Cisneros*, 787 S.W.2d 550, 552 (Tex. App.—El Paso 1990, no writ) ("Approval as to form is a matter of professional courtesy not necessary to a valid judgment."); *Johnson v. Rancho Guadalupe, Inc.*, 789 S.W.2d 596, 603 (Tex. App.—Texarkana 1990, writ denied) (op. on reh'g) (holding that if a judgment is approved as to form only it does not create an inference

that the judgment was rendered by consent); *Bexar Cty. Dist. Attorney's Office v. Mayo*, 773 S.W.2d 642, 644 (Tex. App.—San Antonio 1989, no writ). As the San Antonio court explained, "One who approves a judgment as to form does not thereby give up the right to appeal. He simply indicates that the written judgment accurately sets forth the court's ruling; he may disagree with that ruling and may want to appeal it." *Mayo*, 773 S.W.2d at 644 (citation omitted).

When the word "Approved," without more, has been used, courts have held similarly. *Id.*; *Hill v. Bellville Gen. Hosp.*, 735 S.W.2d 675, 678 (Tex. App.—Houston [1st Dist.] 1987, no writ). Again, the San Antonio court explained,

> The notation "Approved," standing alone, is too indefinite to justify declaring as a matter of law that a judgment is a consent judgment. We hold that when an attorney's signature indicates "Approved" he has simply approved the judgment as to form only, unless other language in the judgment indicates that the substance of the judgment was also agreed.

*Mayo*, 773 S.W.2d at 644 (citation omitted).

On the other hand, with regard to the phrase, "Approved as to Form and Substance," some courts have held that this will indicate a consent judgment, whereas other courts have held that this phrase, standing alone, still will not establish a consent judgment. *Compare Johnson*, 789 S.W.2d at 603 (holding attorney's signature "as to form and substance" of judgment before trial and failure to appear at trial supported an inference that the judgment was agreed upon by the parties), *and Cisneros*, 787 S.W.2d at 552 (explaining that approval as to substance "is tantamount to an

10

agreement by the signatory that the judgment meets all of its essential requirements"), *with In re D.C.*, 180 S.W.3d 647, 649–50 (Tex. App.—Waco 2005) (treating the phrase "approved as to form and content" the same as "approved as to form and substance" in holding that neither phrase, standing alone, is enough to waive any complaints for appeal), *In re Broussard*, 112 S.W.3d 827, 832 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (holding that "approval as to form and substance, standing alone, does not transform a judgment into a consent judgment"), *Chang v. Nguyen*, 81 S.W.3d 314, 316 n.1 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (same), and *First Am. Title Ins. Co. v. Adams*, 829 S.W.2d 356, 364 (Tex. App.—Corpus Christi 1992, writ denied) (same).

The matter is further complicated when the word "agreed" is used. In a case involving a judgment signed by the attorneys as "Approved and Agreed," the San Antonio court held that this phrase did not establish a consent decree. *Oryx Energy Co. v. Union Nat'l Bank of Tex.*, 895 S.W.2d 409, 416–17 (Tex. App.—San Antonio 1995, writ denied). However, the facts of that case drive its result. In *Oryx*, the court pointed out that the order itself "expressly contemplate[d] appeal of the summary judgment," although the court did not recite what language the parties used to so indicate. *Id.* at 417. That, in addition to the lack of any evidence of an agreement in the remainder of the judgment and the entire record, led the court to reason, "to hold that the notation, 'Approved and Agreed' transform[ed] a contested summary judgment into a consent judgment . . . would . . . unnecessarily elevat[e] form over

substance." *Id.* Here, the order contains no reservation of a right to complain on appeal.

The dissent relies upon *Oryx* to argue that the parties here indicated their lack of agreement and the intent to appeal the agreed order by using, within the introductory sentence, a statement that the agreed order was "hereby granted as a final appealable judgment." Even if the order in *Oryx* included similar language—we do not know because the opinion is silent in that respect—the use of "final and appealable" language does not eliminate the agreed nature of the order here. Such an interpretation of this phrase in this judgment would turn *Lehmann v. Har-Con* on its head. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) (examining the historical difficulties in determining the finality of orders and judgments). The supreme court in *Lehmann* attempted to remove the ambiguity existing in the traditional "Mother Hubbard" language by holding that such language should no longer be used to indicate the finality of a judgment. *Id.* (holding that the statement, "all relief not expressly granted is denied," does not necessarily indicate that a judgment is final). In its place, the supreme court recommended the use of language that would indicate finality, such as a statement that the judgment "finally disposes of all parties and all claims and is appealable." *Id.* at 206. In so doing, the court expressly stated that using the word "final" was not enough. *Id.* at 200, 206 ("It is not enough, of course, that the order or judgment merely use the word 'final.' The intent to finally dispose of the case must be unequivocally expressed in the words of the

12

order itself."). Thus, under *Lehmann*, the use of the word "appealable" merely connotes that the judgment was intended to be a final one.

To hold that "final and appealable" language would also indicate a desire to appeal an otherwise agreed judgment would breathe life into the very problem *Lehmann* was designed to cure. Such a holding would create ambiguity in the use of a phrase specifically adopted to eliminate ambiguity. In other words, to follow the dissent's reasoning, future agreed orders containing this phrase for finality purposes could be attacked on appeal with claims that such language indicates an intent to appeal. Consistent with *Lehmann*, we consider this phrase as an indication that the judgment was final, that the clock had begun to run on the trial court's plenary power to change it, and nothing more. *See id.* at 206.

In a case involving a judgment that was approved as to both form and substance and titled "Agreed Judgment," the Fourteenth court was unpersuaded that either the approval language or the title sufficiently demonstrated that the case was an agreed one. *DeClaris Assocs. v. McCoy Workplace Sols.*, 331 S.W.3d 556, 560 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Instead, the court explained that "[t]he record demonstrate[d] that the case was contested throughout the proceedings, from initial pleadings to motions for summary judgment and directed verdict to trial by jury," and that the judgment stated that it was "'[b]ased upon the verdict of the jury,' not on any settlement or agreement between the parties." *Id.*

Even though the agreed order here similarly states that it is in part based upon "the Jury's unanimous verdict," the facts of this case distinguish it from those in *DeClaris*. Here, this recital is immaterial because Nielsen, unlike the appellant in *DeClaris*, does not seek to appeal or otherwise challenge any jury finding. Furthermore, the judgment here was not only entitled "Agreed Order," but the parties' attorneys also signed the order as "AGREED." Most important, Nielsen admits that the bulk of the order—at least two-thirds of the content—was, in fact, agreed to. While the dissent ignores this and argues that "none of the provisions in the judgment indicate that they were a result of any agreement by the parties, which in general is the hallmark of a consent judgment," this approach ignores the elephant in the living room. At least two-thirds of this order is an agreed order as conceded by Nielsen on appeal. There is no dispute that the parties agreed to the division of the estate assets (arguably the primary focus of any will contest) and the admission of the will to probate. In other words, the parties agreed to the partition of the estate, and this agreement was not conditioned on the outcome of this appeal.[2]

---

[2]Thus, even if we reversed the trial court's summary judgment ruling, the ultimate outcome here would not change, as both sides have already entered into an agreement as to the distribution and apportionment of the community estate. If the trial court erred by finding that the Codicil was not conditional, a reversal would not change the distribution and apportionment of the community state. At most, Footman might be ousted as executrix and the Will might be withdrawn from probate, but the property division that has been settled pursuant to the agreement would remain intact.

Notably, the Agreed Order expressly contemplates the consequences of a *prior* appeal that was pending at the time of judgment:

> The Temporary Administrator shall:
>
> a. Deposit $68,550 in the Court's Registry to be held pending the outcome of Nielsen's appeal of the Order on Second Amended Application for Family Allowance, now pending as Cause No. 06-17-00055-CV in the Sixth Court of Appeals. The winner of the appeal shall be entitled to receipt of these funds[.]

And although the order is by Nielsen's admission at least a partially agreed judgment, there is no delineation in the judgment between those parts that are agreed to and those which are not. Finally, Nielsen makes no allegation that the words "Agreed Order" or "AGREED" were fraudulently placed into the order, nor is there any evidence of collusion or misrepresentation. *See Baw*, 949 S.W.2d at 766–67.

Though we are not bound by their opinions, we agree with our sister courts that we should not elevate form over substance. But the facts present in *Oryx* and *DeClaris* are not present here. Here, the attorneys expressed no reservations or exceptions to the global term "agreed" in any of the places where it appeared in the judgment. Likewise, the trial court—who made handwritten changes to the proposed judgment—signed the judgment without reservation or exception as to the global use of the word "agreed."

Words matter, in life but especially in law. Words are the essential tools of the legal profession. Because cases turn on the meaning of words, legal professionals understand that word choices have consequences. Accordingly, it is a standard of our

profession to use words carefully and with precision. Abiding by this principle leads to the consistency, certainty, and predictability that we expect from the law.

The term "agreed" is not ambiguous. Black's Law Dictionary provides but one definition: "Settled or established by agreement." *Agreed*, Black's Law Dictionary (6th ed. 1990).[3]

Attorneys must be charged with knowledge of the meaning of words that appear in documents that they sign. Just as an attorney would counsel a client as to the import of the word "agreed" in a document prepared for the client's signature, attorneys must respect the import of this word when they sign a document on a client's behalf. It is well established that parties are held responsible for reading and understanding what they sign. *See, e.g.*, *In re Media Arts Group, Inc.*, 116 S.W.3d 900, 908 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding [mand. denied]) ("[U]nder Texas law, a person is obligated to protect himself by reading what he signs and, absent fraud, may not excuse himself from the consequences of failing to meet that obligation."); *Kennedy v. Brown*, 113 S.W.2d 1018, 1020 (Tex. App.—Amarillo 1938, writ dism'd) (holding party was charged with full knowledge and notice of contents of deed he signed). We see no reason to hold attorneys to a lesser standard. Indeed, the standard for attorneys cannot be lower.

---

[3]Later editions do not define "agreed."

When a proposed order purports on its face to be "agreed," the attorneys involved are charged with reading and understanding that term. *See* Tex. R. Civ. P. 13 (stating that "signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper"). And when an order which purports on its face to be agreed is only partially agreed, it is incumbent upon an attorney to clarify the limited nature of the agreement prior to affixing his or her signature to it.

Not counting the footer—"AGREED ORDER PROBATING WILL, AND PARTITIONING AND DISTRIBUTING ASSETS"—which appeared at the bottom of every page of the order at issue, the word "agreed" was used in this order not once, but twice—first, as part of the very title of the order itself, and second, standing alone and in ALL CAPS, followed by a colon under which the attorneys' signatures appeared.

To hold in this context that "agreed" means something less than its ordinarily understood meaning would encourage the abandonment of care and precision which should instead be fostered. It would invite and induce a trial court to commit error by disregarding discrepancies between the terms of a proposed judgment and jury findings or prior rulings, based upon a representation that the content of the proposed judgment, including any discrepancies, was agreed to by the parties. It would lead to uncertainty and unpredictability in legal documents and potentially inconsistent results.

17

We hold that under these facts "agreed" means what it says. The term is explicit and unmistakable. Without proof of fraud, collusion, or misrepresentation, Nielsen cannot now complain on appeal of that which she invited or induced by virtue of her attorney's signature on the document itself. Because Nielsen's attorney signed what on its face purported to be an agreed judgment—the bulk of which was *admittedly* agreed to—without delineating or otherwise drawing attention to any portion of the judgment to which Nielsen's agreement was withheld, any error contained in the judgment has been waived. Thus, the agreed order leaves nothing to properly present for appellate review. *See Baw*, 949 S.W.2d at 766.

For this reason, we affirm the trial court's judgment.

## Conclusion

Having held that Nielsen failed to preserve any error in the trial court's summary judgment ruling by entering into the agreed order, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: September 27, 2018

18